**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 23, 2002**

ALFONSO E. ROGERS, Personal Representative
    of the Estate of Daimon Ja'Von Rogers,
    Deceased,

    Plaintiff-Appellee,

v                                No. 118766

J. B. HUNT TRANSPORT, INC.,

    Defendant-Appellant

and

WESLEY HOWARD CRENSHAW,

    Defendant.
_____

**BEFORE THE ENTIRE COURT**

**WEAVER, J.**

In this wrongful death action, we address whether a default entered against an employee that conclusively determined the employee's negligence for the purpose of the employee's personal liability is also a proper foundation for an order holding his employer vicariously liable. The Court

of Appeals held that it was, thereby extending the effect of the default to the employer and precluding the employer from contesting its vicarious liability. We reverse the decision of the Court of Appeals and remand to the circuit court.

I

This action arises from an automobile accident that occurred in the early afternoon on June 17, 1996. The decedent, Daimon Rogers, was killed when his vehicle left the roadway and struck a tractor-trailer rig parked on the north shoulder of the westbound I-96 expressway in Eaton County, Michigan. It is undisputed that defendant-appellant J. B. Hunt owned the tractor-trailer and that defendant Wesley Crenshaw had been operating the tractor-trailer in the course of his employment with J. B. Hunt.

J. B. Hunt terminated Crenshaw's employment in July 1996. Subsequently, on July 23, 1996, the personal representative of Daimon Rogers' estate filed a complaint against Crenshaw and J. B. Hunt. It alleged Crenshaw was negligent and that his negligence was a proximate cause of Daimon Rogers' crash and death. It also alleged J. B. Hunt's vicarious liability. J. B. Hunt filed an answer on its own behalf denying Crenshaw's negligence and causation. However, Crenshaw failed to personally file an answer or appear in response to two summonses. On March 20, 1997, the Eaton Circuit Court issued

a third summons and an order permitting alternative service of process by publication and by service on codefendant, J. B. Hunt. Thereafter, J. B. Hunt's attorney purported to file an answer on behalf of Crenshaw.

Crenshaw repeatedly failed to appear for depositions over a fourteen-month period. On August 6, 1998, plaintiff obtained an order of default pursuant to MCR 2.313(B) and (D) against Crenshaw. During the hearing on plaintiff's motion for the default of Crenshaw, J. B. Hunt's attorney moved to withdraw as counsel of record for Crenshaw. The trial court granted both motions. J. B. Hunt did not object to the entry of the order of default.

On December 15, 1998, plaintiff moved for partial summary disposition regarding the liability of J. B. Hunt. Plaintiff argued that the default that was entered against defendant Crenshaw settled the question of J. B. Hunt's liability and, therefore, J. B. Hunt could not contest the issues of negligence and causation at trial. Plaintiff also argued that J. B. Hunt was precluded from presenting the affirmative defense of comparative negligence. The circuit court granted plaintiff's motion in part, concluding that J. B. Hunt was vicariously liable for the negligence of Crenshaw and could not contest at trial the issues of negligence and proximate cause. However, the trial court also denied the motion in

3

part, concluding that J. B. Hunt could raise the defense of the decedent's comparative negligence and whether his comparative negligence was a proximate cause of the accident.

The Court of Appeals affirmed, citing "compelling policy consideration[s]" involving vicarious liability. 244 Mich App 600, 610; 624 NW2d 532 (2001). Specifically, the panel stated, "[e]mployers are held vicariously liable not because of their ability to control their employees' conduct, but because they stand to profit from their employees' conduct." *Id*. at 610-611. With this, the panel discarded the linchpin justifying vicarious liability between an employer and an employee—that the employee committed an act producing a claim in the scope of employment. The panel's reasoning suggests that if the employer financially profits from an employee's activities, the employer is vicariously liable not only for everything the employee does within the scope of employment, but also to all acts tangentially related to that employment or occurring outside the scope of employment, even if they occurred after the employee leaves the employment. We granted leave to appeal because the panel's suggestion that an employer may be vicariously liable not only for employees' torts committed within the scope of employment, but also for wrongful conduct outside the scope of employment is worthy of review.

4

## II

The law regarding respondeat superior and, in particular, how the entry of a default against an employee affects the liability of an employer where the employer's sole source of liability is vicarious are questions of law. We review questions of law de novo. *Kelly v Builders Square, Inc,* 465 Mich 29, 34; 632 NW2d 912 (2001). The grant of a motion for summary disposition is also reviewed de novo. *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001).

## III

In addressing this issue as posed by the Court of Appeals, it is important to clarify why the courts have imposed liability on those who were not the actors, but merely the masters of the actors. The reason is that "a master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment." *Murphy v Kuhartz,* 244 Mich 54, 56; 221 NW 143 (1982). An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control. For example, it is well established that an employee's negligence committed while on a frolic or detour, *Drobnicki v Packard Motor Car Co,* 212 Mich 133; 180 NW 459 (1920), or after hours, *Eberle Brewing Co v Briscoe Motor*

5

*Co,* 194 Mich 140; 160 NW 440 (1916), is not imputed to the employer. In addition, even where an employee is working, vicarious liability is not without its limits. For example, we have held that "there is no liability on the part of an employer for torts intentionally or recklessly committed by an employee beyond the scope of his master's business." *Bradley v Stevens,* 329 Mich 556, 562; 46 NW2d 382 (1951).

Likewise, respondeat superior or vicarious liability principles do not support imposing liability on J. B. Hunt in the present case merely on the basis of Crenshaw's default. When Crenshaw failed to participate in this litigation, he was not acting within the scope of employment. Rather, Crenshaw was acting on behalf of himself only in regard to the litigation. In fact, his procedural failures were committed when he was a *former* employee of J. B. Hunt. Because his nonparticipation was not in the course of his employment with J. B. Hunt, extending liability to J. B. Hunt for Crenshaw's nonparticipation is beyond the scope of vicarious liability.

In this regard, we emphasize that the basis of vicarious liability is not merely that an employer typically has a greater ability to pay than an employee. As a leading treatise on American tort law explains, additional rationales for vicarious liability for acts of agents within the scope of employment include providing an incentive for employers to

6

attempt to reduce tortious conduct by their employees and the fair distribution of risk associated with activity characteristic of a business or other entity. See Dobbs, Torts, § 334, pp 908-910. Risks typically associated with operating trucks may fairly be said to be characteristic of J. B. Hunt's business activities. However, an employee's refusal to participate in litigation is not a characteristic risk of operating a trucking business. Accordingly, such nonparticipation is not something that an employer can reasonably be expected to deter or fairly be expected to absorb as a cost of doing business.

Here Crenshaw was not, in his capacity as a litigant, acting for J. B. Hunt. To bind an employer to the actions of a party who was not acting within the scope of employment at the time those actions occur, violates the central tenet of vicarious liability that a master's liability is derivative of the servant's. In sum, the rationales that support the imposition of vicarious liability on a master also support limiting such liability to conduct that occurs within the scope of employment. *Id.,* p 910. By misapplying the policies underpinning vicarious liability, the Court of Appeals panel in this case took the doctrine too far.

Moreover, the Court of Appeals approach is contrary to longstanding legal principles related to the effect of a

default.  As a sanction for Crenshaw's failure to cooperate with the discovery process, the trial court entered an order of default against him.  It is well settled under the law that this default operates as an admission of Crenshaw's negligence.  However, a traditional rule of default provides that the default of one party is not an admission of liability on the part of a nondefaulting coparty.  *Allstate Ins Co v Hayes*, 442 Mich 56, 73; 499 NW2d 743 (1993).  Thus, the default entered against Crenshaw does not establish any liability on the part of J. B. Hunt.

While the doctrine of vicarious liability allocates the risk of an employee's negligent acts occurring during the course of employment on the employer, we cannot agree that this rule justifies the extension of the effect of a default to a codefendant.  Default is a punitive measure, appropriate in defined circumstances, the threat of which encourages the cooperation of parties to a suit.  Our court rules governing the entry of defaults and default judgments are narrowly designed to sanction an uncooperative party.  Nowhere in the rules is it contemplated that a cooperating party can be sanctioned for a coparty's procedural shortcomings.[1]

---

[1] MCR 2.313(D)(1)(a) provides that "just" sanctions are appropriate where a party fails to appear for depositions after being served proper notice.  MCR 2.313(B)(2)(c) provides for "rendering a judgment by default against the disobedient party."

8

Obviously, J. B. Hunt could not force its former employee, Crenshaw, to participate in discovery. Indeed, it has never been contended that J. B. Hunt controlled Crenshaw's litigation activity or participated in misconduct that produced Crenshaw's default. Therefore, the goal of forcing defendants to properly cooperate with litigation would not be reasonably furthered by extending the consequences of the default to J. B. Hunt. As recognized by *Stillwell v City of Wheeling*, 210 W Va 599, 606; 558 SE2d 598 (2001), penalizing a party that has no control over a co-party's default would "have no deterrent effect."

Our decision is informed by our court system's preference for disposition of issues on their merits. *North v Dep't of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986) (addressing this preference in the context of a dismissal with prejudice). For this reason, defaults and default judgments are not favored in the law. *Wood v Detroit Automobile Inter-Ins Exch,* 413 Mich 573, 586; 321 NW2d 653 (1982). In this regard, it is important to emphasize that the entry of a default against Crenshaw does not establish that he was actually negligent in connection with the accident underlying this case. Rather, the entry of the default bars him from contesting the issue of his negligence because of his failure to properly participate in the litigation. Unlike Crenshaw,

9

J. B. Hunt has participated in the litigation. Thus, there is nothing inconsistent in allowing J. B. Hunt to contest the alleged negligence of Crenshaw even though Crenshaw himself would not be allowed to do so in light of the default entered against him.

Our decision does not undercut the validity of default as a sanction for discovery abuses. Contrary to the Court of Appeals concerns, allowing J. B. Hunt to contest Crenshaw's negligence and causation does not render the punitive purposes of the default meaningless. The default remains in force against Crenshaw and forecloses his ability to present proofs denying his own negligence.[2] Potentially, plaintiff is prejudiced to the extent that he cannot depose Crenshaw. However, J. B. Hunt's defense is similarly potentially prejudiced by the absence of Crenshaw's testimony. The possible prejudicial consequences of a party's failure to appear and resultant default do not justify the extension of the punitive effect the sanction to an appearing party or denying that party the opportunity to present its defense.

IV

We conclude that, where a party's sole source of liability is vicarious, a default entered against a coparty

---

[2] As Crenshaw's alleged negligence has yet to be litigated, we express no opinion on the merits of the negligence or proximate cause issues.

10

does not preclude the former from contesting its vicarious liability. The decision of the Court of Appeals is reversed and this matter remanded to the circuit court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

CAVANAGH, J., concurred in the result only.

11

STATE OF MICHIGAN

SUPREME COURT

ALFONSO E. ROGERS, personal
representative of the estate of
Daimon Ja'Von Rogers, deceased,

    Plaintiff-Appellee,

v                                    No. 118766

J. B. HUNT TRANSPORT, INC.,

    Defendant-Appellant,

and

WESLEY HOWARD CRENSHAW.
_____

KELLY, J. (*dissenting*).

    I disagree with the majority's narrow view of vicarious liability.

    The Court of Appeals held, for legal and public policy reasons, that it is proper to hold the employer, J. B. Hunt Transport, Inc., liable for a tort that was established by default. In doing so, it followed the law:

> Where several defendants are treated as one, as in cases involving employers and employees, but one defaults, the defaulter still has the benefit of any contributory negligence established against the plaintiff by the remaining defendant. Thus, where vicarious liability is found, the court should tell the jury that the defaulting employee has been found negligent, and his negligence should

be compared to that of the plaintiff in determining the defendants' liability. [57B Am Jur 2d, Negligence, § 1276, p 174.]

I agree with the Court of Appeals, which used the default of the driver, Wesley Crenshaw, to preclude Hunt from denying liability for Crenshaw's negligence.

The majority relies on the notion that Hunt's "control" of Crenshaw at the time of the default is the key to whether Hunt is liable. It assumes that the only time when liability for Crenshaw's acts could attach was when Crenshaw was an employee of Hunt.

Certainly, control is one of the considerations upon which respondeat superior liability reposes. However, it is not the only consideration. When the majority uses control as its only consideration, it confuses liability arising from respondeat superior with vicarious liability arising from another doctrine, agency.

The difference between the two is explained by 27 Am Jur 2d, Employment Relationship, § 460, pp 897-898:

Vicarious liability based on agency is distinct from liability based on respondeat superior in that the employer is not liable for the acts of the employee under the former theory unless the employee acted on behalf of or under the authority of the employer and unless the employer clearly approved of the wrongful conduct.

The majority is using an agency theory to support vicarious liability. Because Hunt had no control over Crenshaw when the

latter defaulted, the majority will not allow vicarious liability to attach.

Vicarious liability should be found in this case not on the basis of agency, but on the basis of the doctrine of respondeat superior. Holding the employer liable for the underlying tort, even though its employee defaulted, would satisfy vital policy interests, such as justice, convenience, deterrence, social justice, and the ability to give the victim an effective remedy. These approaches have been explained in Am Jur 2d:

> The modern basis for vicarious liability is that, as a matter of public policy, an enterprise or an activity should bear the risk of a tort—committed or resulting from omission—of those who, in fact, carry on the enterprise, activity or operation. It is a part of the cost of doing business or carrying on various activities; and, in modern society, in Western countries at least, the cost is spread throughout industries or even the public at large by use of liability insurance and similar self-insurer devices—rather than being borne by some hapless injury victim. Thus, the doctrine has been developed and extended out of the necessity of changing social and economic conditions. [57B Am Jur 2d, Negligence, § 1753, pp 447-448.]

The authors of Torts, Prosser and Keeton, also assert that vicarious liability is not a mere question of control, and that other bases exist for it:

> The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of that employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the

employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of the employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large. [Prosser & Keeton, Torts (5th ed), § 69, pp 500-501.]

Therefore, the majority errs by giving undue weight to control. Had Crenshaw been held liable after a trial, Hunt would have been liable for Crenshaw's negligence, even though it has no control over what Crenshaw did, said, or admitted at trial. This is because, on a respondeat superior theory, the employer is normally liable for the employee's underlying tort.

There is another good reason to hold the employer liable here. Default is considered to be a punitive measure, but it is accepted in the law because it is needed to preserve a fair tribunal, free of egregious discovery abuses. Despite this need, the majority allows the employer a potential benefit from the driver's default, the driver's absence from trial as a major witness.

Moreover, the policy reasons cited by the majority support the use of the default against Hunt. As it points out, the imposition of vicarious liability serves as an incentive for employers to reduce tortious conduct and

promotes a fair distribution of risk. Trucking companies hire drivers to traverse multiple states where they might become involved in accidents. They must be held to know that a lawsuit and the potential default of an out-of-state driver are risks to be expected in their business.[1] In balance, it is better that Hunt not be allowed a potential benefit from the absence of Crenshaw at trial.

Finally, it should be noted that the imposition of vicarious liability on Hunt would not render it defenseless at trial. A default would establish negligence on the part of Crenshaw, but it would not determine the extent of Hunt's liability. Under the Court of Appeals decision, Hunt would still be able to contest up to ninety-nine percent of its liability at trial.

Because I believe that the majority's analysis is too restrictive a view of vicarious liability based on respondeat superior, I dissent.

---

[1]In fact, it has happened before that a trucking company's driver, resident in another state, became involved in an accident and defaulted upon being sued. See, e.g., *J B Hunt Transport, Inc v Bentley*, 207 Ga App 250; 427 SE2d 499 (1993).