*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELA A. COOKE, Personal Representative of the ESTATE OF MADISON C. COOKE, MEGAN E. OCKERMAN, and GINA M. BADIA,

Plaintiffs-Appellees,

v

FORD MOTOR COMPANY,

Defendant-Appellant.

FOR PUBLICATION
September 10, 2020
9:10 a.m.

No. 346091
Ingham Circuit Court
LC No. 17-000061-NI

Before: CAVANAGH, P.J., and BORRELLO and TUKEL, JJ.

CAVANAGH, P.J.

Defendant, Ford Motor Company, appeals by leave granted[1] an order denying its motion for summary disposition in this motor vehicle negligence action raising wrongful death and personal injury claims under two theories of liability: Michigan's owner's liability statute, MCL 257.401, and common-law vicarious liability. We reverse and remand for entry of an order granting summary disposition in favor of Ford Motor.

## I. BACKGROUND FACTS

This action arose from a single-vehicle accident in which the driver, Tariq Y. Strong, Jr., and a passenger, Madison C. Cooke, were killed, and two other passengers, Megan E. Ockerman and Gina M. Badia, were seriously injured. The facts are generally undisputed. Strong was driving a 2015 Lincoln MKS Sedan that had been leased by Debra Ockerman through a Ford Motor program that allowed certain management-level employees and retirees to lease Ford vehicles from Ford Motor. In June 2015, Ockerman allowed her 18-year-old daughter, Megan,[2] to use the vehicle

---

[1] *Estate of Madison C Cooke*, unpublished order of the Court of Appeals, entered March 28, 2019 (Docket No. 346091).

[2] Megan Ockerman will be referred to by her first name to distinguish her from her mother, Debra Ockerman, who will be referred to as Ockerman.

to go to a music festival with Strong, Cooke, and Badia. Megan and her friends attended the music festival and began driving home after midnight. Megan asked Strong to drive. While Strong was driving, he lost control of the car and hit a tree. The collision killed Strong and Cooke. Megan and Badia survived but were seriously injured.

Cooke's estate, Megan, and Badia sued Ford Motor, alleging that as a statutory owner of the vehicle, Ford Motor was liable for Strong's negligent operation of that vehicle under Michigan's owner's liability statute, MCL 257.401. Plaintiffs also named Strong's estate as a defendant. Plaintiffs later filed an amended complaint adding the allegation that Ford Motor was vicariously liable for Strong's negligent operation of the vehicle as the employer of the vehicle's lessee, relying on *Montgomery v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued May 22, 2007 (Docket No. 272862). Plaintiffs filed a second amended complaint reasserting its previous claims and adding defendant Ford Motor Credit Company (Ford Credit), alleging that it too was liable under the owner's liability statute.[3]

Ford Credit purchased the vehicle from Ford Motor, and then leased the vehicle back to Ford Motor, which in turn leased the vehicle to Ockerman. Ford Credit leased the vehicle to Ford Motor pursuant to a "Master Vehicle Agreement." Ford Credit is the title owner. The lease between Ford Motor and Ockerman[4] is entitled "Product Testing and Evaluation Vehicle Lease Agreement." The lessee's monthly payment for the lease of the vehicle was $438. The minimum term of the lease was nine months. The lease provided that Ford Motor could, "[f]rom time to time," "request reasonable inspection and evaluation of the vehicle" and could request the lessee to "produce the vehicle for inspection or provide the Company with evaluation reports concerning the quality and performance of the vehicle." The lease allowed Ford Motor to terminate the lessee's participation in the lease program if the lessee failed to submit evaluation reports upon request, or if Ford Motor determined that the lessee's participation "would be inappropriate as not serving the Company's interest." The lease included a provision that encouraged the lessee to allow others to drive the car for up to three days:

> To further the Company's interests by promoting its products, Lessee is encouraged to permit others to drive the vehicle for demonstration purposes. However, regular continuous assignment (herein defined as greater than 3 days) of the vehicle during the term of this lease is restricted to the Lessee and members of the Lessee's family.

After discovery, Ford Motor moved for summary disposition under MCR 2.116(C)(10), arguing that in light of the undisputed facts and this Court's interpretation of "engaged in the business of leasing" set forth in *Ball v Chrysler Corp*, 225 Mich App 284; 570 NW2d 481 (1997), Ford Motor was not a statutory owner of the vehicle. It argued that even if Ford Motor was somehow a statutory owner, Michigan's owner's liability statute is preempted by the federal Graves Amendment, which prohibits the imposition of ownership liability on long-term lessors.

---

[3] Ford Credit was subsequently dismissed on their motion for summary disposition and that order has not been appealed. Thus, we do not further address that matter.

[4] The lease provides that use of the term "lessee" in the lease refers to the employee or retiree—in this case, Ockerman—who is leasing the vehicle.

Lastly, Ford Motor argued that it could not be held vicariously liable for Strong's negligence under *Montgomery*, or any other theory of respondeat superior liability, because Strong was not Ford Motor's employee.

In response, plaintiffs argued that Ford Motor is a statutory owner of the vehicle involved in the accident because it leased the vehicle from Ford Credit. Even though Ford Motor subsequently leased the vehicle to Ockerman, plaintiffs argued, Ford Motor is considered a nonexempt lessor under the owner's liability statute because it is not in the business of leasing motor vehicles. Plaintiffs asserted that the phrase "engaged in the business of leasing" should not be interpreted under *Ball*, but instead under *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13; 678 NW2d 619 (2004), a tax case interpreting the General Sales Tax Act, to determine whether, under the "incidental to service test," a business is "engaged in the business of" selling products in addition to services. Plaintiffs argued that Ford Motor's employee/retiree lease program is "incidental" to Ford Motor's primary business of selling cars. Plaintiffs also argued that Ford Motor was vicariously liable under the common law principles identified in *Montgomery* because these principles were not limited to the context of the employer-employee relationship if the lease benefited the employer. Plaintiffs argued that under the reasoning in *Montgomery*, vicarious employer liability for contractually-rendered benefits will attach when (1) a contract is entered into between the employer and the employee within the employment relationship; (2) the contract is for the rendition of services that benefit the employer; and (3) the injury occurs in the course of rendering those services. Lastly, plaintiffs argued that the Graves Amendment should be interpreted in accordance with *Catalina*.

Following oral arguments on defendant's motion, the trial court issued its ruling from the bench. The trial court concluded that Ford Motor is not a lessor because Ford Motor is not "in the business of leasing motor vehicles" within the meaning of the lessor exemption in the owner's liability statute, MCL 257.401a. Rather, the court noted, this activity was incidental to its business of developing and manufacturing motor vehicles. Ford Motor benefited by providing leased vehicles to certain executives in its employment, possibly as an incentive or as compensation, but also for the promotion of its vehicles to the public, as well as for purposes of product testing and evaluation. Thus, Ford Motor was a lessee, not a lessor, and subject to liability under MCL 257.401(1) as an owner of the motor vehicle at issue.

Further, the trial court concluded, plaintiffs presented a viable theory of vicarious liability against Ford Motor. Specifically, the trial court stated:

> As to the second theory, the separate theory, which is one of vicarious liability, I'm not specifically relying on the *Montgomery* case because, obviously, it's not binding precedent. It's an unpublished decision. But it does—it does highlight what I think applies here, and that is common law vicarious liability potential that would apply here, as far as the use of this—this vehicle and the purposes of having the executive lease program.

> So I'm going to deny Ford Motor Company's motion for summary disposition as to both of those theories. The ownership liability or lessor—the issue as to ownership liability and to vicarious liability.

> But I'm not going to rule in favor, as far as a factual determination, in favor of the Plaintiffs. I think there is a fact question here. . . .

The trial court granted Ford Motor's motion for stay pending this interlocutory appeal. Thereafter, this Court granted Ford Motor's application for leave to appeal. *Estate of Madison C Cooke*, unpublished order of the Court of Appeals, entered March 28, 2019 (Docket No. 346091).

## II. OWNER'S LIABILITY STATUTE

Ford Motor argues that the trial court erred in concluding that it could be held liable as a statutory owner under Michigan's owner's liability statute, MCL 257.401, because as a long-term lessor of over 15,000 vehicles it is exempt from owner's liability for plaintiffs' wrongful death and personal injury claims. We agree.

## A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Sullivan v Michigan*, 328 Mich App 74, 80; 935 NW2d 413 (2019). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Where there is a genuine issue of material fact, summary disposition is not proper. *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

This Court reviews questions of statutory interpretation de novo and a trial court's factual findings for clear error. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). A finding of fact "is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). When interpreting a statute, our goal is to ascertain and effectuate the meaning intended by the Legislature. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). First, we review the language of the statute. If the statutory language is clear and unambiguous, the plain meaning of the statute reflects the Legislature's intent. *Id*. In such cases, judicial construction is not permitted and this Court will apply the statute as written. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

## B. ANALYSIS

Plaintiffs sought damages from Ford Motor under the owner's liability statute of the civil liability act, MCL 257.401. That act is part of the Michigan Vehicle Code (MVC), MCL 257.1 *et seq.*, and for purposes of the MVC, the term "owner" is defined by MCL 257.37:

> "Owner" means any of the following:

(a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.

(b) Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.

(c) A person who has the immediate right of possession of a vehicle under an installment sale contract.

The owner's liability statute, MCL 257.401, generally imposes liability on owners of motor vehicles for injuries caused by the negligent operation of that motor vehicle:

(1) This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family. [MCL 257.401(1).]

"The purpose of the statute is to place the risk of damage or injury on the person who has the ultimate control of the motor vehicle, as well as on the person who is in immediate control." *North v Kolomyjec*, 199 Mich App 724, 726; 502 NW2d 765 (1993). However, the owner's liability statute exempts long-term lessors from liability:

A person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days, or a dealer acting as agent for that lessor, is not liable at common law for damages for injuries to either person or property resulting from the operation of the leased motor vehicle, including damages occurring after the expiration of the lease if the vehicle is in the possession of the lessee. [MCL 257.401(2).]

The civil liability act does not consider such a lessor an "owner" for purposes of owner's liability, stating:

As used in this chapter, "owner" does not include a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days. [MCL 257.401a.]

Ford Motor argues that as a long-term lessor engaged in the business of leasing motor vehicles, it is excluded from the statutory definition of "owner" and exempt from both statutory and common law liability for negligent operation of the motor vehicle under MCL 257.401(2) and MCL 257.401a. Ford Motor maintains that *Ball v Chrysler Corp*, 225 Mich App 284; 570 NW2d 481 (1997), is on point both factually and legally, requiring judgment for Ford Motor.

In *Ball*, the plaintiff was injured while a passenger in a vehicle that was leased to a Chrysler employee through Chrysler's employee/retiree lease program as part of its normal business operations. *Id*. at 285. The lease was for two years, and as part of the lease agreement the employee was required to complete surveys regarding the vehicle at certain mileage intervals. *Id*. The driver at the time of the accident was the employee's stepson. The stepson lost control of the vehicle, which rolled over, injuring the plaintiff passenger. *Id*. The plaintiff sued Chrysler, the employee, and the employee's stepson. *Id*. Chrysler sought summary disposition under MCR 2.116(C)(10), arguing that as a lessor, it was excluded from owner's liability. Chrysler noted that it was uncontested that it leased cars as part of its business and that the lease for the employee's car was for two years. *Id*. at 286. Chrysler presented an affidavit indicating that Chrysler was in the business of leasing motor vehicles. *Id*. at 289. The plaintiff argued that "the vehicle lease was not a true lease, but more like a vehicle-testing agreement, because the lessee had an obligation to make reports and provide information to Chrysler." *Id*. at 286. The trial court agreed that a question of fact existed as to whether the lease between the employee and Chrysler was in fact a "lease" or was more akin to a vehicle-testing agreement or fringe benefit, and thus, denied Chrysler's motion for summary disposition. *Id*.

On appeal, Chrysler argued that the trial court had erred by not determining that it was "in the business of leasing motor vehicles" under MCL 257.401(2) and MCL 257.401a, and therefore, was not an "owner" subject to liability under MCL 257.401(1). *Ball*, 225 Mich App at 287-288. This Court agreed, holding:

> Turning to the record before us, plaintiff presented no evidence to counter the affidavit that Chrysler was in the business of leasing motor vehicles. Rather, plaintiff argued that the agreement between Chrysler and [the employee], under Chrysler's employee/retiree lease program, was not a true lease. We disagree. Although the program presumably gave [the employee] a discount lease rate and required that he fill out questionnaires from time to time, there is no question that the agreement between Chrysler and [the employee] was an automobile lease. Nothing in the statute requires that the lessor's primary business be retail leasing, or, for that matter, that the lease be profitable. There is no issue of material fact that Chrysler was "in the business of leasing motor vehicles."
>
> * * *
>
> In sum, there is no question of material fact that Chrysler is in the business of leasing vehicles . . . . Accordingly, under the plain and unambiguous language of the owner's liability statute, Chrysler is not the "owner" of the vehicle involved in the instant case. MCL 257.401, 257.401a. The circuit court erred in denying Chrysler's motion for summary disposition pursuant to MCR 2.116(C)(10). [*Id*. at 289-290.]

In the present case, plaintiffs argued that *Ball* is not dispositive. Plaintiffs agreed that this Court held that Chrysler was entitled to summary disposition on the question of whether it was in the business of leasing motor vehicles. Plaintiffs asserted, however, that the holding was not based on the interpretation of the phrase "engaged in the business of leasing motor vehicles" but, rather, was solely based on the fact that Chrysler averred in an affidavit that it was engaged in the business of leasing vehicles and the plaintiff did not present any evidence to rebut that fact. Plaintiffs acknowledged that in the present case Ford Motor similarly relied on an affidavit to establish that it was engaged in the business of leasing motor vehicles, but argued that the present case is distinguishable from *Ball* because plaintiffs refuted the affidavit with deposition testimony and other documentary evidence. Plaintiffs relied on the testimony of Ford Motor's vehicle program manager, David Smith, who testified that Ford Motor does not make a profit from the lease program and that the Ford employee benefits from participating in the lease program in the form of a cheaper lease rate that merely offsets the costs of the program. Plaintiffs maintained that the lease in this case was merely "incidental" to Ford Motor's primary business of designing, manufacturing, and selling automobiles and was intended to benefit Ford Motor by: (1) providing a fleet of vehicles that it could use to evaluate known problems with the vehicles, (2) advancing Ford Motor's marketing efforts, and (3) providing a cost-effective fringe benefit to Ford Motor executives.

The trial court was persuaded by plaintiffs' argument, concluding that Ford Motor is not a lessor for purposes of MCL 257.401a and MCL 257.401(2) because it is not engaged in the business of leasing motor vehicles. The court stated that Ford Motor's lease program

> is incidental to Ford Motor Company's business of developing, however you want to describe that, manufacturing motor vehicles, and that the leasing is used as a benefit both in terms of a reward or compensation or incentive to a certain level of executive at Ford Motor Company and use[d] for promotion of vehicles for the public and to engage in product testing and evaluation as is described by the lease that's applicable here.

Ford Motor argues that the trial court's decision is contrary to *Ball*. In support, Ford Motor notes that Smith attested that Ford Motor "is in the practice of leasing vehicles to its management-level employees for period of greater than 30 days." Smith also testified that Ford Motor leased the vehicle involved in this case to Ockerman on September 23, 2014, for a period greater than 30 days.

On review of the record, it appears that the employee/retiree lease program in this case is similar to the lease program in *Ball*. Smith testified that the management lease program "is a perk for what we call LL6 management-level employees and above. And then certain retirees, if they're at the LL4 level and above." Smith explained that "making money" on the leased cars was not really the goal of the program; rather, the goal was to provide a perk to certain employees and that perk was also considered a tool to attract and retain employees. But Ford Motor does benefit merely by putting vehicles on the road. Smith said that Ford Motor had approximately 15,000 vehicles in the program, with 10,000 to 12,000 of them in Michigan. Because most of these vehicles are in southeast Michigan, the program has very little promotional value to Ford Motor. Smith explained that Ford Motor secures automobile liability coverage that is prorated for all lease

vehicles in the fleet and that the prorated cost of insurance is paid by each employee. The employee is also responsible for a $250 repair fee for each accident.

While the leased vehicle is a fringe benefit to the lessee Ford Motor employee, and Ford Motor does not necessarily derive a monetary profit from its lease program, we nevertheless reach the same conclusion as the *Ball* Court: "Nothing in the statute requires that the lessor's primary business be retail leasing, or, for that matter, that the lease be profitable." *Ball*, 225 Mich App at 289. Ford Motor presented evidence that it leases approximately 15,000 vehicles a year under its employee/retiree lease program pursuant to a lease agreement for a term of no less than nine months. According to the plain terms of the statutes, Ford Motor was "engaged in the business of leasing motor vehicles" as contemplated by MCL 257.401(2) and MCL 257.401a and is exempt from liability under the owner's liability statute.[5]

And we agree with Ford Motor's contention that the trial court erroneously applied the "incidental to service" test set forth in *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 24; 678 NW2d 619 (2004), when it determined that Ford Motor was not engaged in the business of leasing motor vehicles. In *Catalina*, the issue was whether a grocery store coupon checkout program was a retail sale for purposes of the retail sales tax statute, MCL 205.52. *Id*. at 14. The Court considered the proper test for categorizing business relationships involving both the provision of services and the transfer of tangible property as either a service or a retail sale, generating either use tax or sales tax, and adopted the "incidental to service" test. *Id*. at 14-15, 19, 24. *Catalina* involved a tax statute, with a different purpose, and its own definition of "business."[6]

Here, neither the trial court nor plaintiffs cited any case that applies the incidental activity test to the owner's liability statute. And neither the trial court nor plaintiffs cite anything in the owner's liability statute or related caselaw that requires a lessor to demonstrate that its leasing program is undertaken for profit, or that it be the lessor's primary business. The *Catalina* factors are relevant to "whether the transfer of tangible property was incidental to the rendering of . . . services[.]" *Id*. at 26. There is nothing to support plaintiffs' suggestion that *Catalina* "overrules by implication" cases interpreting a different phrase in a different statute with a different purpose. The *Catalina* factors are inapplicable in this case, and the trial court erred by implicitly applying those factors.

In summary, the trial court erred by denying Ford Motor's motion for summary disposition because Ford Motor is a lessor engaged in the long-term leasing of motor vehicles and is exempt

---

[5] See also *Joe Panian Chevrolet, Inc v Young*, 239 Mich App 227, 228, 231; 608 NW2d 89 (2000) (a dealership that rented a vehicle for four days, at a rate of $30 a day, to a customer whose vehicle was in the dealership for repair was "engaged in the business of leasing motor vehicles" for purposes of MCL 257.401(5) of the owner's liability statute, which sets forth the circumstances when a short-term lessor will be liable for injuries caused by the negligent operation of the motor vehicle that it leased).

[6] For purposes of the sales tax act, " 'Business' includes an activity engaged in by a person or caused to be engaged in by that person with the object of gain, benefit, or advantage, either direct or indirect." MCL 205.51(1)(e).

from civil liability for the negligent use of the leased motor vehicles. In light of our conclusion, we decline to address as moot Ford Motor's alternative argument that the Graves Amendment to the Federal Transportation Equity Act of 2005, 49 USC 30106, preempts any liability that would be imposed against Ford Motor under the owner's liability statute.

## III. VICARIOUS LIABILITY

Next, Ford Motor argues that the trial court erred in concluding that it could be held vicariously liable for a nonemployee's negligent operation of a leased vehicle. We agree.

## A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Sullivan*, 328 Mich App at 80. A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists. *Joseph*, 491 Mich at 206; *Maiden*, 461 Mich at 120.

## B. ANALYSIS

Plaintiffs sought to hold Ford Motor liable for Strong's negligent operation of the leased vehicle under a common law theory of vicarious liability. In general, vicarious liability arises from a relationship between a principal and an agent. *Rogers v JB Hunt Transp, Inc*, 466 Mich 645, 650; 649 NW2d 23 (2002). In *Rogers*, the Court stated:

> [A] master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment. An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employee's control. For example, it is well established that an employee's negligence committed while on frolic or detour, or after hours, is not imputed to the employer. In addition, even where an employee is working, vicarious liability is not without its limits. . . . [*Id*. at 651 (quotation marks and citations omitted).]

"[A] master's liability is derivative of the servant's"—that is the central tenet of vicarious liability. *Id*. at 652. This agency relationship can be created in law or by contract. *Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 559; 847 NW2d 679 (2014) (citations omitted). As has been explained:

> The modern basis for vicarious liability is that, as a matter of public policy, an enterprise or an activity should bear the risk of a tort—committed or resulting from omission—of those who, in fact, carry on the enterprise, activity or operation. It is a part of the cost of doing business or carrying on various activities . . . . [57B Am Jur 2d, Negligence, § 1753, pp 447-448.]

In this case, the trial court determined that Ford Motor could be liable to plaintiffs on a vicarious liability theory. Although recognizing that it was not binding authority, the trial court relied on *Montgomery v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court

of Appeals, issued May 22, 2007 (Docket No. 272862), as persuasive. However, the facts in that case are dissimilar to the facts in this case on critical points. While the vehicle involved in an automobile accident in *Montgomery* was also a vehicle leased through a product testing and evaluation lease agreement, the person driving the vehicle at the time of the accident was the lessee-employee and she was on her way to work. *Id*. at 2. Further, the lease in *Montgomery* directed that the employee must "primarily . . . use the car for product testing and evaluation purposes." *Id*. The *Montgomery* employee testified that she was always evaluating the vehicle while driving it and submitted vehicle evaluations regularly to Ford Motor. *Id*. Under those unique circumstances, Ford Motor was deemed vicariously liable for its employee's negligence because the employee's operation of the vehicle at the time of the accident conferred a benefit on Ford Motor. *Id*. at 3. That is, at the time of the accident, the employee's operation of the vehicle was "related to her employment with Ford, and she was engaged in the service of the master (Ford) by driving and evaluating the vehicle." *Id*. Clearly, that is not the case here.

Strong, who was driving the vehicle at the time of this accident, was not the lessee of the vehicle, he was not a Ford Motor employee conceivably acting within the scope of such employment when the accident occurred, the lease did not direct the lessee-employee to primarily use the car for Ford Motor's testing and evaluation purposes, Strong was not driving the vehicle for the purpose of evaluating it at the behest of Ford Motor, and Ford Motor derived no benefit from Strong driving the leased vehicle at the time of the accident. Vicarious liability simply has no application under these circumstances. Therefore, the trial court erred by denying Ford Motor's motion for summary disposition with respect to plaintiffs' claims under the common-law doctrine of vicarious liability.

## IV. CONCLUSION

The trial court's order denying Ford Motor's motion for summary disposition is reversed because (1) Ford Motor is exempt from owner's liability for plaintiffs' wrongful death and personal injury claims, and (2) Ford Motor is not vicariously liable for the negligence of Strong. This matter is remanded for entry of an order granting summary disposition in favor of Ford Motor.

Reversed and remanded for entry of an order granting summary disposition in favor of defendant, Ford Motor Company. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ Jonathan Tukel