*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE D. HENDERSON and STANLEY E.
HENDERSON,

        Plaintiffs-Appellants,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and CAMERON
THOMAS WRIGHT,

        Defendants,

and

KAMAX INC.,

        Defendant-Appellee.

UNPUBLISHED
December 12, 2025
8:57 AM

No. 374578
Oakland Circuit Court
LC No. 2023-201246-NF

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

Plaintiffs, Diane and Stanley Henderson, challenge the trial court's grant of summary disposition under MCR 2.116(C)(10) to defendant, Kamax Inc., on plaintiffs' respondeat superior claim. Plaintiffs also challenge the trial court's order denying, in part, their motion to compel complete discovery responses. We affirm.

## I. BACKGROUND

This case arises from an accident involving an automobile and a pedestrian. On July 6, 2022, at 11:44 a.m., 73-year-old Diane Henderson was crossing an intersection in the crosswalk when defendant Cameron Wright struck her with his truck, causing severe personal injuries to Diane. Wright called 911. When police arrived, the upper portion of Diane's body was under the rear bed of Wright's truck. Paramedics transported Diane to a nearby hospital. Wright provided a statement to police and the truck was impounded. Wright called his wife, Kristi Wright, asking

-1-

her to pick him up. Kristi arrived about five minutes later. Wright left the scene with Kristi shortly thereafter.

On the date of the accident, Wright was employed as a sales engineer and account manager for Kamax, a manufacturer and supplier of automotive fasteners and bolts. Mark Mahaffy, vice president of sales at Kamax, manages and supervises the sales team as part of his duties. One of Wright's larger accounts was Ford Motor Company.

Wright works remotely from his home office three days weekly. His home office includes a company-provided monitor and laptop. He was issued a phone for work, which allows access to his work e-mails and phone calls. Wright was expected to respond to customers "in a reasonable amount of time" during work hours. Wright visits customers about twice weekly, and the company's manufacturing plant occasionally. Wright stated he is "aware" of situations involving "hot part" issues, or when a part is running late, but typically, does not have to address those issues himself. Wright carries his work phone during work hours.

On the date of the collision, Wright was working remotely from his home office. In the morning, he sent and received over 30 e-mails involving various customers and coworkers.[1] After responding to an e-mail from a customer, Ali Berber, at 11:24 a.m., Wright decided to take a break.[2] He had lunch for about 10 minutes, then left to pick up his dry cleaning. Wright took his work phone with him and intended to return home after the errand. Diane was struck at 11:44 a.m., and transported from the scene at 12:04 p.m. At some point, Wright provided a statement to police. At 12:24 p.m., Wright sent an e-mail to a buyer at Ford, Carlos Requejo, using his work phone. Wright stated the e-mail was sent after he left the scene, after he was picked up by Kristi. Kristi drove Wright to pick up his dry cleaning at 12:41 p.m. After picking up the dry cleaning, Wright returned home and continued working. Between 12:24 p.m. and 4:09 p.m., Wright sent or received about 30 e-mails involving numerous customers and coworkers.

Plaintiffs commenced this negligence action against Wright.[3] The trial court later granted plaintiffs leave to amend their complaint to add Kamax and join it as a defendant under a theory of respondeat superior. Plaintiffs asserted that Wright was "performing duties within the scope of his employment when he stuck Diane Henderson," including "responding to customer emails throughout the day[.]"

Relevant to this appeal, plaintiffs sent Kamax: (a) requests for admissions, (b) a first set of interrogatories, and (c) a first request to produce documents. Plaintiffs requested information regarding Wright's employment, including his cell phone providers, e-mails, social media, and

---

[1] Wright spends a majority of his work day responding to e-mails.

[2] Wright manages his own work schedule and decides when to take breaks.

[3] Plaintiffs also included claims for personal injury protection benefits under the no-fault act, MCL 500.3101 *et seq*., and underinsured motorist benefits against their insurer, defendant State Farm Mutual Automobile Insurance Company. State Farm was later dismissed without prejudice by stipulation after the parties reached a settlement.

text messages on the date of the accident. Plaintiffs further requested that Kamax produce Wright's cell phone records, text messages, and e-mails from June 30, 2022, to July 13, 2022.[4]

Kamax responded to the discovery requests, but objected to turning over Wright's e-mails and text messages because they were irrelevant and confidential business records. Kamax added that Wright was "NOT texting at the time of the incident." Plaintiffs moved to compel complete discovery responses. Plaintiffs argued Kamax's responses to its discovery requests were insufficient. Plaintiffs asserted Kamax should produce Wright's unredacted e-mails and text messages because they were relevant to whether he was distracted while driving.[5] Kamax in turn moved to compel Wright's deposition and opposed the motion to compel because plaintiffs impermissibly sought business records or otherwise irrelevant information. Plaintiffs opposed Kamax's motion to compel Wright's deposition until discovery was completed.

The parties mediated some discovery issues. The parties agreed to some of the issues at mediation, including that Kamax would provide "phone records from June 30, 2022[,] to July 13, 2022." The remaining issues for the trial court to decide included "producing e[-]mail messages, text messages, and social media activity for those dates . . . as well as producing [] Wrights' personnel file, compensation, duties, training, and discipline records."

Following a hearing on September 11, 2024, the trial court found plaintiffs' request for Wright's "e[-]mails, text messages, social media activity is an overbroad request" and thus denied this portion of plaintiffs' motion. The trial court noted on the record that Kamax already "agreed to provide Verizon phone records," from June 30, 2022, until July 13, 2022. On September 18, 2024, the trial court entered its order granting in part and denying in part plaintiffs' motion to compel. The trial court ordered Kamax to produce Wright's personnel file within 14 days of the signed order, but denied, without prejudice, plaintiffs' request to compel Kamax to produce Wright's e-mails and text messages.

On September 11, 2024, plaintiffs filed a renewed motion to compel complete discovery responses and noticed it for hearing on September 18, 2024. Plaintiffs argued again the responses by Wright and Kamax to the discovery requests were "insufficient." Plaintiffs requested the court to compel Kamax to produce Wright's unredacted e-mails and text messages, as well as cell phone records. Kamax opposed the motion arguing that it "restates the same position" as the initial motion to compel. Kamax also reiterated that it would provide the phone records. On September 17, 2024, the trial court clerk notified the parties by e-mail that the renewed motion was removed from the court's docket, indicated the motion was previously addressed and denied, and instructed plaintiffs to file a motion for reconsideration.

On September 17, 2024, plaintiffs moved for reconsideration of the trial court's denial of the motion to compel and noticed it for hearing on September 25, 2024. On September 24, 2024, the trial court clerk notified the parties by e-mail that plaintiffs' "motion for reconsideration of order denying motion to compel" was removed from the court's September 25, 2024 docket, and

---

[4] Plaintiffs also sent discovery requests separately to Wright, which he answered separately.

[5] Wright opposed the motion to compel as overbroad "and not limited in scope[.]"

instructed plaintiffs to "follow the court protocol regarding filing motions for reconsideration." On September 25, 2024, the trial court entered an order consistent with the clerk's e-mail.

On September 25, 2024, plaintiffs filed a notice of submission of an order regarding the renewed motion to compel, including a proposed order granting in part and denying in part the renewed motion to compel. The proposed order reflected that a hearing was held on the motion on September 25, 2024, and that plaintiffs' counsel appeared, but defense counsel failed to appear. Wright and Kamax filed a joint objection to the proposed order. On October 25, 2024, the trial court ordered plaintiffs' motion for reconsideration withdrawn because plaintiffs communicated the motion was "moot."

Kamax moved for summary disposition under MCR 2.116(C)(10), asserting it was not vicariously liable for Wright's actions because he was performing a personal errand when the accident occurred. Plaintiffs opposed summary disposition, contending there was a genuine issue of material fact whether Wright was acting in the scope of his employment when the accident occurred. Kamax filed a reply brief, asserting plaintiffs merely speculated about what the evidence could suggest, which "is not sufficient to survive summary disposition."

The trial court granted the motion for summary disposition, and dismissed plaintiffs' claim against Kamax. The trial court concluded that there was no genuine issue of material fact that Wright was "not acting within the scope of his employment at the time of the accident," and Wright's "trip was being made for [his] private purpose, and Kamax did not create the necessity for the travel." This appeal followed.

## II. ANALYSIS

### A. MOTION FOR SUMMARY DISPOSITION

Plaintiffs contend the trial court erred by granting summary disposition in favor of Kamax because there were genuine issues of material fact whether Wright was performing work duties when the accident occurred. We disagree.

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up).

"Under the doctrine of respondeat superior, an employer may be vicariously liable for the acts of an employee committed within the scope of his employment." *Helsel v Morcom*, 219 Mich App 14, 21; 555 NW2d 852 (1996). Our Supreme Court has explained: "[T]he doctrine of vicarious liability allocates the risk of an employee's negligent acts occurring during the course of employment on the employer." *Rogers v JB Hunt Transp, Inc*, 466 Mich 645, 653; 649 NW2d 23

(2002). "[T]he basis of vicarious liability is not merely that an employer typically has a greater ability to pay than an employee." *Id.* at 651-652. Rather:

> [A] master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment. An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control. For example, it is well established that an employee's negligence committed while on a frolic or detour, or after hours, is not imputed to the employer. In addition, even where an employee is working, vicarious liability is not without its limits. For example, we have held that there is no liability on the part of an employer for torts intentionally or recklessly committed by an employee beyond the scope of his master's business. [*Id.* at 651 (cleaned up).]

"Within the scope of employment" has been defined by our Supreme Court "to mean engaged in the service of his master, or while about his master's business." *Hamed v Wayne County*, 490 Mich 1, 11; 803 NW2d 237 (2011) (cleaned up). "Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Id.* "Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id.*

Michigan courts recognize the dual-purpose rule, which states "that an employer is liable for the torts of his servant committed while going to or coming from work, if the employee's trip involved a service of benefit to the employer." *Kester v Mattis, Inc*, 44 Mich App 22, 24; 204 NW2d 741 (1972). "If the work of the employer creates the necessity for travel, [the employee] is in the course of his employment, though he is serving at the same time some purpose of his own." *Ten Brink v Mokma*, 13 Mich App 85, 87; 163 NW2d 687 (1968) (cleaned up). But if "the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it." *Id.* (cleaned up). "While the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact, the issue may be decided as a matter of law where it is clear that the employee was acting to accomplish some purpose of his own." *Bryant v Brannen*, 180 Mich App 87, 98; 446 NW2d 847 (1989).

The record does not support that Wright was performing work duties on his journey to the dry cleaners. Wright's employment agreement with Kamax states that he must "devote his entire working time, energy[,] and skills to this position." Wright estimated he spends a majority of his work days answering e-mails from customers. Because Wright only works in the office two days weekly, Kamax provided him a work phone to access his e-mails and phone calls. Contrary to plaintiffs' position that Wright must be available to customers immediately, Mahaffy noted Wright is expected to respond to customers "in a reasonable amount of time" during work hours. The purpose of Kamax providing work phones to certain employees, including Wright, was to allow accessibility while away from the office. Mahaffy noted employees are on call during work hours, but he does not expect employees to respond to e-mails while driving. Instead, the purpose of the work phone is to allow support to customers as needed. Wright testified that he provides a "timely response" to customers while he was away from his desk.

Shortly before the accident occurred, Wright stopped working and took a ten-minute lunch break. After eating lunch, Wright drove to pick up his dry cleaning. Wright testified that the trip to the dry cleaners was "not work[-]related," but he took his work phone with him because it was his habit. Wright did not make any stops on the way to the dry cleaners before the accident occurred. The record shows that Wright did not send or receive any e-mails between when he stopped working for lunch and when the accident occurred. Wright also did not make or receive any phone calls during this time, other than to call 911 and call his wife. Wright's trip to the dry cleaners was "intended solely to further the employee's individual interests[.]" See *Hamed*, 490 Mich at 11. The evidence does not support that the trip to the dry cleaners was accomplished "in furtherance, or the interest, of the employer's business." See *id*.

On appeal, plaintiffs contend Kamax has no evidence, except Wright's self-serving statement suggesting he was not working at the time of the accident. Wright explained he "take[s] breaks" during the work day. Mahaffy also stated Wright manages his own time, including when he takes lunch breaks. Wright is not "expected to be available at all times," but is "expected to be able to answer in a reasonable time[.]" Kristi added Wright occasionally runs personal errands during his "lunch hour." Plaintiffs did not present any evidence establishing a genuine issue of material fact regarding the scope of Wright's employment at the time of the accident.

Plaintiffs rely on this Court's opinion in *Byzewski v Aerotek, Inc*, unpublished per curiam opinion of the Court of Appeals, issued January 20, 2004 (Docket No. 242676)[6], to support their position that there are factual questions for a jury to decide whether Wright was "acting within the scope of his employment" with Kamax when the accident occurred. In *Byzewski*, the defendant, Jeffrey Alan Baumbach, was driving and involved in a motor vehicle accident after having attended a work seminar. *Id*. at 1-2. The trial court granted the motion for summary disposition brought by the defendants-employers, Aerotek, Inc. and General Motors Corporation. *Id*. This Court reversed as to General Motors Corporation, because "there are genuine issues of material fact on the issue whether at the time of the accident Baumbach was acting within the scope of his employment with General Motors." *Id*. at 5. Specifically, there was "conflicting testimony whether Baumbach was driving home or to his GM office at the time of the accident." *Id*.

*Byzewski* is distinguishable from the facts of this case. Wright left his home office to drive to the dry cleaners and planned to return directly home. He "didn't need to use" his work phone during his lunch break because he "wasn't supposed to be gone for very long," and "could have left it at home." Mahaffy reviewed records indicating "there was [sic] no meetings at the time of the accident," which was "consistent with a lunch break." Although Wright is encouraged to take his work phone with him while away from his desk and must "timely" reply to customers' calls or e-mails, Mahaffy explained he does not expect employees to respond to e-mails while driving. And regardless, Wright did not send or receive any communications from the time he started his lunch break until 40 minutes after the accident occurred.

---

[6] Although this opinion was unpublished, this Court "may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2, 988 NW2d 797 (2022) (cleaned up).

Plaintiffs further argue the trip to the dry cleaners was within the scope of Wright's employment because he was picking up work attire, and Wright never abandoned his work duties during the day. Plaintiffs assert there is a question of fact whether Wright needed the clothes from the dry cleaners for a meeting he had scheduled for that afternoon. Consequently, plaintiffs contend the dual-purpose rule applies. This argument lacks merit. The record established Wright called Kristi after the accident and asked her to pick him up. She arrived about five minutes later and left with Wright shortly after. Wright picked up his dry cleaning, which included "a couple of dress shirts, a couple of pair of pants, [and] maybe a couple of sweaters." The clothing was a mix of work clothing and "everyday stuff." Mahaffy stated office dress code is "pretty casual," and a golf shirt is appropriate. He said Wright was never required to wear a suit.

Regardless of whether any of the clothes picked up were work attire, there was no evidence presented that Kamax ordered Wright to pick up this clothing, or have it dry cleaned. The evidence also established the only meeting Wright had scheduled on July 6, 2022, took place remotely in the morning before Wright picked up his dry cleaning. He explained it was a "shortage meeting," and he did not remember if he "had to join it." Kamax is not liable under the dual-purpose rule because the accident did not occur while Wright was "going to or coming from work," and did not involve "a service of benefit to the employer." *Kester*, 44 Mich App at 24. Wright's act of picking up his dry cleaning was for a private purpose and outside the scope of his employment. Because Wright was "acting to accomplish some purpose of his own," this issue was properly "decided as a matter of law." See *Bryant*, 180 Mich App at 98.

## B. MOTION TO COMPEL COMPLETE DISCOVERY RESPONSES

Despite a convoluted procedural history, plaintiffs contend the trial court erred by denying in part their motion to compel insofar as plaintiffs requested Kamax to produce Wright's unredacted e-mails and text messages.[7] We disagree.

"Generally, we review the grant or denial of a discovery motion for an abuse of discretion. An abuse of discretion is not simply a matter of a difference in judicial opinion, rather it occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011) (citation omitted).

"It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Augustine*, 292 Mich App at 419 (cleaned up). MCR 2.302(B)(1) states:

---

[7] On appeal, Kamax argues this Court lacks jurisdiction to the extent plaintiffs challenged a September 25, 2024 order regarding the renewed motion to compel because "no such order was entered by the trial court." This argument lacks merit because plaintiffs are not appealing from that never-entered proposed order. Plaintiffs' arguments instead stem from the September 18, 2024 order denying in part and granting in part plaintiffs' motion for more complete answers, over which the court has jurisdiction. The order, which is dated September 17, 2024, was not docketed on the register of actions until September 18.

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information. Information within the scope of discovery need not be admissible in evidence to be discoverable.

"However, Michigan's commitment to open and far-reaching discovery does not encompass fishing expedition[s]. Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Augustine*, 292 Mich App at 419-420 (cleaned up).

Plaintiffs moved to compel Kamax to produce Wright's text messages and e-mails, which plaintiffs contended were relevant as to whether Wright was distracted while driving. Kamax opposed the motion, arguing that plaintiffs sought business records or irrelevant information. The trial court found plaintiffs' request for Wrights' "e[-]mails, text messages, social media activity is an overbroad request." The trial court denied this portion of the motion to compel because it was "a fishing expedition, and therefore, not proportionate to the needs of the case[,]" "lack[ed] information based on the written pleadings," and was overbroad. The trial court noted Kamax "agreed to provide Verizon phone records" from June 30, 2022, until July 13, 2022. Kamax's counsel indicated there were no text messages from Wright's work phone available.

The trial court did not abuse its discretion or otherwise err by denying plaintiffs' request to compel Kamax to provide Wright's unredacted text messages and e-mails. Although the e-mails might have contained some relevant information, plaintiffs did not articulate how the content of the e-mails would support their argument Wright was distracted when he hit Diane. Plaintiffs contend Wright might have been under the scope of his employment with Kamax while driving to the dry cleaners because he was busy dealing with some sort of emergency with a customer. But even assuming Wright was handling an emergency with one of his customers, the record does not support he used his phone for any reason while he was driving. Wright sent an e-mail at 11:24 a.m. and proceeded to take a personal break. Wright had lunch at home with his wife, and then left to pick up his dry cleaning. There is no record of any phone calls made or received at the time Wright was driving. Similarly, Wright did not receive or send any e-mails during this time.

Without more details, it is unclear why the content of the e-mails would be helpful to plaintiffs. The mere conjecture Wright was distracted while driving because of a crisis at work is insufficient to allow discovery of the unredacted e-mails. Kamax provided the redacted e-mails for the relevant time frame. Moreover, as explained, even assuming there was an emergency, the redacted e-mails and phone records indicate Wright was inactive during his break and did not send any work-related correspondence until 40 minutes after the accident.

To the extent plaintiffs assert the trial court erred by denying either the renewed motion to compel or motion for reconsideration, the trial court did not enter an order denying either motion. It is undisputed the renewed motion to compel was removed from the trial court's motion docket

and the motion for reconsideration was withdrawn after plaintiffs informed the trial court it was moot.  Consequently, any arguments regarding these motions are not properly before this court.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace