*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHY PLACIDO,

       Plaintiff-Appellee,

v

ABDELKADER HAWASLI, M.D. and HAWASLI
AND ASSOCIATES SURGICAL SPECIALISTS,
P.C., doing business as ASCENSION MEDICAL
GROUP MICHIGAN,

       Defendants,

and

ASCENSION MEDICAL GROUP MICHIGAN,
doing business as ASCENSION MEDICAL
GROUP, and ASCENSION ST. JOHN HOSPITAL,
doing business as ST. JOHN HOSPITAL AND
MEDICAL CENTER,

       Defendants-Appellants.

UNPUBLISHED
June 1, 2023

No. 359890
Wayne Circuit Court
LC No. 20-003376-NH

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

LETICA, J. (*concurring in part and dissenting in part*).

I agree with the majority that the trial court erred in denying the motion for summary disposition brought by defendant Ascension St. John Hospital, doing business as St. John Hospital and Medical Center ("St. John Hospital"), warranting reversal and remand for entry of an order granting the dispositive motion. However, I would further conclude that the trial court erred in denying the motion for summary disposition brought by defendant Ascension Medical Group Michigan, doing business as Ascension Medical Group ("Ascension"). Because the majority holds to the contrary, I respectfully dissent on that issue. Additionally, I dissent from the majority's conclusion that plaintiff appropriately raised a claim of ordinary negligence pertaining to the

-1-

removal of her thyroid. Consequently, I would reverse the trial court's denial of summary disposition and grant summary disposition in favor of these defendants.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff filed a complaint, alleging that she was a 56-year-old female with a history of parathyroidectomy and previously had parathyroid glands surgically removed. She asserted that she had a scan and other imaging in late 2018, indicating that she had multiple bilateral thyroid nodules. In January 2019, plaintiff consented to have surgery performed by defendant Dr. Abdelkader Hawasli, but claimed that she only agreed to "minimally invasive right inferior parathyroidectomy rapid path nuclear probe." Additionally, plaintiff alleged that she was adamant that her thyroid not be removed because of her occupation[1] and at the recommendation of an ear, nose and throat doctor. Despite her instructions, she claimed that Dr. Hawasli performed a total thyroidectomy. After the surgery, plaintiff asserted that she could not drink, had difficulty breathing, and could barely speak. Plaintiff sued, alleging "medical malpractice/negligence/gross negligence" against Dr. Hawasli in count I and claims against Hawasli & Associates Surgical Specialists, P.C., doing business as Eastside Surgical Associates, in count II.

Pertinent to this appeal, in count III, plaintiff raised the claim of "medical malpractice/negligence/gross negligence" against Ascension. Specifically, she asserted that Ascension was responsible for all phases of the operation of a general surgery facility that included selection of the medical staff and the quality of care rendered by its ostensible agents or employees, including Dr. Hawasli. Additionally, Ascension was required "to provide care and treatment consistent with that of a reasonable and prudent general surgery facility." Despite having a direct duty to plaintiff, plaintiff alleged that Ascension was "negligent" for failing to provide proper medical care, failing to employ hospital staff with the degree of skill and learning for the locality, failing to "supervise, direct, monitor and control" the healthcare providers, failing to adopt rules and regulations to ensure the healthcare professionals had adequate experience and expertise, and other acts "of professional negligence yet to be determined." Plaintiff claimed that those breaches of the standard of care were the proximate cause of her injury; specifically, undergoing an unnecessary total thyroidectomy to which she did not consent and causing her to suffer nerve damage. Ascension was allegedly responsible for plaintiff's psychological and economic damages through vicarious liability or respondeat superior. In count IV, plaintiff reiterated these same duties, breach, and theories against St. John Hospital, the site of the surgery.

Three separate motions for summary disposition were filed. St. John Hospital moved for summary disposition under MCR 2.116(C)(10). In its motion, St. John Hospital alleged that plaintiff filed a medical malpractice action against it arising from Dr. Hawasli's performance of neck surgery for the removal of parathyroid and thyroid tissue. Plaintiff alleged that St. John Hospital was vicariously liable for the alleged negligence by Dr. Hawasli, and that St. John Hospital was negligent in its policies, procedures, and privileges issued to the doctor that performed her surgery. Nevertheless, St. John Hospital contended that plaintiff failed to support

---

[1] Plaintiff testified that she worked as a dealer at a casino and used her voice in her work.

these claims with expert testimony because her expert did not criticize its policies, procedures, or credentialing.

St. John Hospital also contended that it could not be vicariously liable for any alleged negligence by Dr. Hawasli because he was not an employee at the time of the surgery and there was no contract or facts to establish that he was an employee or ostensible agent of St. John Hospital. Rather, plaintiff looked to Dr. Hawasli for treatment in light of their existing physician-patient relationship established at his private office long before the surgery occurred. St. John Hospital also asserted that plaintiff could not demonstrate ostensible agency between it and Dr. Hawasli when it made no representation to plaintiff and merely served as the site for the surgery. Because Dr. Hawasli was not an employee of St. John Hospital and plaintiff could not establish an ostensible agency, St. John Hospital submitted that it was entitled to summary disposition.

Plaintiff opposed St. John Hospital's dispositive motion and alleged that it was vicariously liable for Dr. Hawasli's negligent removal of plaintiff's thyroid because it occurred without her consent. Specifically, plaintiff alleged that she could pursue an agency claim because St. John Hospital entered into an employment contract, the Professional Services Agreement (PSA), with Dr. Hawasli, thereby making him an employee and agent of the hospital. Plaintiff submitted that the question of agency presented an issue for the jury to determine.[2] Moreover, through the PSA, "Ascension" retained considerable control "over Dr. Hawasli's duties and how care was provided" because all patient records belonged to Ascension, Dr. Hawasli's clinic was promoted as part of the St. John network, the clinic physicians could only provide services set forth in the agreement, all clinic fees were billed by Ascension, and Dr. Hawasli's clinic rent, salary, and liability insurance were paid by Ascension. Plaintiff relied on the PSA as demonstrating significant control retained by "Ascension" over Dr. Hawasli and his clinic. This control by Ascension purportedly created a genuine issue over whether Dr. Hawasli was an actual agent of St. John Hospital and any vicarious liability as a result. Therefore, summary disposition was inappropriate.

In a written order, the trial court denied the motion, stating "St[.] John [Hospital] had an employment contract with Dr Hawasli[.]"

Ascension also moved for summary disposition under MCR 2.116(C)(10). Similar to St. John Hospital's dispositive motion, Ascension alleged that it was not a party to any contract with Dr. Hawasli that would establish an employer-employee relationship. Ascension further alleged that Dr. Hawasli could not be its actual agent because it did not control Dr. Hawasli's medical care and decisions. It contended that there was no evidence that plaintiff looked to anyone other than Dr. Hawasli for treatment, and there was no evidence that Ascension made plaintiff believe that there was an ostensible agency relationship. Therefore, plaintiff's claim failed.

Plaintiff opposed Ascension's dispositive motion, alleging that the jury could conclude that Dr. Hawasli was an actual agent of Ascension, citing the PSA and maintaining that questions of

---

[2] In her response to the motion for summary disposition filed by St. John Hospital, plaintiff repeatedly referred to "Ascension" and did not distinguish between the two entities.

fact existed. Plaintiff alleged that the PSA gave Ascension control over Dr. Hawasli that raised factual issues regarding ostensible and actual agency.

In a written order, the trial court denied Ascension's dispositive motion without hearing oral argument. The order simply stated that, "Dr[.] Hawasli was an employee of St[.] John by contract[.]"

Finally, both Ascension and St. John Hospital moved for partial summary disposition of the claims of ordinary and gross negligence under MCR 2.116(C)(10). Plaintiff contended medical malpractice was committed during the performance of neck surgery to remove parathyroid and thyroid tissue. Despite this medical malpractice claim, plaintiff also asserted actions for negligence and gross negligence arising out of the surgery. Because plaintiff's claims sounded in medical malpractice, the claims of negligence and gross negligence pertaining to both defendants allegedly warranted dismissal.

Again, plaintiff opposed the motion to dismiss these negligence claims. Plaintiff submitted that negligence and gross negligence were premised on Dr. Hawasli's removal of her thyroid against her wishes and without her consent. Under the doctrine of informed consent, Dr. Hawasli was required to advise plaintiff of the risks and consequences of a medical procedure. This omission purportedly supported a finding of gross negligence "on the part of Defendant Hawasli for removing Plaintiff's thyroid without her consent." And, any removal of the thyroid without plaintiff's consent constituted a battery. Plaintiff submitted that an intentional act did not qualify as medical malpractice. Thus, she claimed there were material factual issues regarding negligence and gross negligence for the jury to determine.

The trial court denied this dispositive motion without hearing oral argument. Unlike the other two dispositive motions, the order contained no brief explanation for the ruling. St. John Hospital and Ascension appealed these rulings.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

## III. APPLICABLE LAW

In a general employment relationship, the employer or master is responsible for the wrongful acts of his employee or servant committed during the performance of a duty within the scope of his employment. *Rogers v JB Hunt Transp*, 466 Mich 645, 650-651; 649 NW2d 23 (2002). "An employer is not vicariously liable for acts committed by its employees outside the

-4-

scope of employment, because the employee is not acting for the employer or under the employer's control." *Id*. at 651. The employer of an independent contractor is not liable for the contractor's negligence because the employer does not control the independent contractor, and therefore, the employer should not be held vicariously liable for actions outside of his control. *St Clair v XPO Logistics, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356968), slip op at 10, lv pending. However, when an employer retains control over an independent contractor, the employer may be liable in negligence. *Id*.

> The test for whether a worker is an independent contractor or an employee is whether the worker has control over the method of his or her work: If the employer of a person or business ostensibly labeled an independent contractor retains control over the method of the work, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant. [*Campbell v Kovich*, 273 Mich App 227, 234; 731 NW2d 112 (2006) (citations and punctuation omitted).]

But even when an employer-employee relationship is lacking, vicarious liability may exist through agency. *Laster v Henry Ford Health Sys*, 316 Mich App 726, 735; 892 NW2d 442 (2016). And the labels that the parties use to define the relationship are not dispositive. *Id*. at 736.

In a medical malpractice action, the plaintiff must prove the applicable standard of care, breach of that standard by the defendant, injury, and proximate cause between the alleged breach and the injury. *Cox v Bd of Hosp Managers*, 467 Mich 1, 10; 651 NW2d 356 (2002); *Benigni v Alsawah*, ___ Mich App ___, ___: ___ NW2d ___ (2022) (Docket No. 357033), slip op at 6. In examining a claim of medical malpractice, it is crucial to determine whether the claim of negligent acts arose in the course of a professional relationship. *Cox*, 467 Mich at 10-11. When a plaintiff fails to raise a claim of direct negligence by the defendant hospital, any liability must be premised on a theory of vicarious liability. *Id*. at 11.

> Vicarious liability is "indirect responsibility imposed by operation of law." . . . As [our Supreme Court] stated in 1871:
>
> > [T]he master is bound to keep his servants within their proper bounds, and is responsible if he does not. *The law contemplates that their acts are his acts, and that he is constructively present at them all*. [*Smith v Webster*, 23 Mich 298, 299-300 (1871) (emphasis added).]
>
> In other words, the principal "is only liable because the law creates a practical identity with his [agents], so that he is held to have done what they have done. *Id*. at 300. See also *Ducre v Sparrow-Kroll Lumber Co*, 168 Mich 49, 52; 133 NW 938 (1911).
>
> Applying this analysis, [a] defendant hospital can be held vicariously liable for the negligence of its employees and agents only. [*Cox*, 467 Mich at 11-12 (emphasis in original).]

Thus, the foundation of vicarious liability is that the principal is liable because the law creates a practical identity with his agents such that the principal is held responsible for the acts of the agent. *Potter v McLeary*, 484 Mich 397, 424-425; 774 NW2d 1 (2009). When liability is premised on vicarious liability, the professional entity and the licensed health provider are considered the same actor. *Id*.

"Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978); see also *Vanstelle v Macaskill*, 255 Mich App 1, 8; 662 NW2d 41 (2003). An independent contractor is "one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished." *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 73; 600 NW2d 348 (1999) (citation omitted.). "However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found." *Grewe*, 404 Mich at 250-251. Indeed, an agency may be actual or ostensible, see e.g., *Strach v St John Hosp Corp*, 160 Mich App 251, 282-283; 408 NW2d 441 (1987).

In *Grewe*, our Supreme Court examined how to determine whether an agency relationship existed, stating:

> In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the treating doctor] or whether the plaintiff and [the treating doctor] had a patient-physician relationship independent of the hospital setting. [*Grewe*, 404 Mich at 251.]

Our Supreme Court acknowledged that hospitals may engage in independent contractor relationships with their employees, but a plaintiff does not look to the control in that relationship. Instead, the *Grewe* Court adopted the following test, stating:

> The relationship between a given physician and a hospital may well be that of an independent contractor performing services for, but not subject to, the direct control of the hospital. However, that is not of critical importance to the patient who is the ultimate victim of that physician's malpractice . . .
>
> > An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. In this connection it is urged by appellant that before a recovery can be had against a principal for the alleged acts of an ostensible agent, three things must be proved, *to wit* . . . [First, t]he person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some

-6-

act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Grewe*, 404 Mich at 252-253 (citations and quotations omitted).]

In *Grewe*, the plaintiff went to the hospital to obtain treatment for a separated shoulder. The plaintiff testified that he went to and expected to be treated by the hospital, and there was no evidence that the treating doctor was an independent contractor instead of a hospital employee. *Id.* at 253-254. Specifically, the plaintiff testified that when he entered the hospital, it was to obtain treatment from the hospital itself. He had no preexisting patient-physician relationship with any of the medical personnel who treated him at the hospital. Even the doctors that treated the plaintiff at the hospital testified that their treatment arose from the plaintiff's presentation at the hospital; the emergency room doctor examined the plaintiff and then the plaintiff was referred to other doctors at the hospital. *Id.* at 255-256. In light of the evidence, the *Grewe* Court determined that the jury verdict against the defendant hospital was supported by the evidence because the plaintiff looked to the defendant hospital for treatment and "was treated by medical personnel who were the ostensible agents of [the] defendant hospital." *Id.* at 255.

## IV. THE PSA AND ST. JOHN HOSPITAL

St. John Hospital contends that the PSA addressed administrative services and does not establish sufficient control to impose an employment or agency relationship, and in turn, liability upon it for the actions of Dr. Hawasli.[3] I agree.

---

[3] To avoid liability, St. John Hospital also submitted that it was not a party to the contract, and therefore, could not be bound by its terms. The PSA provided that it was executed on March 17, 2014, and it was to take effect on May 1, 2014. The parties to the PSA were identified as "Medical Resources Group" (MRG) which was characterized as "a member of St. John Providence Health System," and Hawasli and Associates Surgical Specialist, P.C. Dr. Hawasli, individually was not a party to the agreement. On March 1, 2018, there was a second amendment to the PSA executed between "St. John Hospital and Medical Center" and Hawasli and Associates Surgical Specialists, P.C. Although St. John Hospital concludes that it was not a party to the PSA and that its corporate entity must be respected, it was required to make and support its motion for summary disposition with documentary evidence. *Charter Twp of Pittsfield*, 338 Mich App at 449. St. John Hospital did not present documentary evidence addressing the various corporate structures and members or present an affidavit addressing its relationship or affiliation to MRG, if any. Nonetheless, an employer-employee relationship is contingent on control. As noted, the test of whether a worker is an independent contractor or an employee is contingent upon whether the worker has control over the method of his work. *Campbell*, 273 Mich App at 234. Because the key evaluation of the relationship is the exercise of control, the lack of certainty pertaining to the corporate membership between MRG and St. John Hospital does not preclude summary disposition. Even if it was assumed that St. John Hospital was a party to the PSA, the PSA and Dr. Hawasli's testimony delineated the level of control over the work and served as the foundation for determining whether there was an employee or independent contractor relationship. The assumption of which entity is a party to the agreement has no bearing on control.

Here, the parties dispute whether an employee-employer relationship is present under the PSA and whether it governs liability. The rules of contract construction provide:

> The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Mallory v City of Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). Issues regarding the proper interpretation of a contract or the legal effect of a contractual clause are reviewed de novo. *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 16-17; 718 NW2d 827 (2006). When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). If the language of the contract is clear and unambiguous, it must be enforced as written. *Id*. A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation. *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008). Every word, phrase, and clause in a contract must be given effect and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided. *Woodington v Shookoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). [*McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).]

The PSA provided that Medical Resource Group (MRG) operated various physician clinics and sought to retain the services of physicians to staff the clinics. Therefore, the professional corporation of Hawasli and Associates Surgical Specialists, P.C. was retained to provide the physicians to staff the MRG clinic. The agreement provided that "[p]hysicians shall administer to the medical needs of each patient who seeks Services at the Clinic and who is reasonably determined by the Physicians to be in need of such Services, all as reasonably determined by the Physicians in the Physician's professional judgment." The PSA expressed that Clinic patients would receive healthcare services not only at the Clinic but also at St. John Providence Health System. Yet, the clinic physicians were entitled to refer patients to other facilities if the patient expressed a preference, if the insurance designated the provider, or if it was in the best interest of the patient in light of the physician's medical judgment. PSA, Section 1.2.

The physicians that treated patients at the clinic had to comply with state licensing requirements and be board-certified. PSA, Section 1.4. The physicians had to abide by the policies and procedures of MRG, and the operating budget, non-physician staffing, and equipment were provided by MRG although there was provision for consultation with the PC. PSA, Sections 1.5, 2.2, 2.3, and 2.4. The medical records were the property of MRG. PSA, Section 2.5. The Clinic was operated under the assumed name of "Hawasli & Associates Surgical Specialists" but the clinic was promoted as part of the St. John Providence Physician Network. PSA, Section 2.6. MRG was responsible for billings. PSA, Section 3. The professional liability insurance was paid for by MRG. PSA, Section 6.2. The PSA defined the physicians staffing the Clinic as independent contractors:

6.1    Independent Contractor Status.

6.1.1   In performing Services pursuant to this Agreement PC and Physician are at all times acting as independent contractors. Nothing in this Agreement is intended to create an employer/employee relationship or a joint venture relationship between said parties and MRG.

6.1.2   Except as provided herein, PC reserves to itself the exclusive right to designate the hours, duties and work assignments of Physician. Nothing in this Agreement is intended to allow MRG to exercise control or direction over the manner or method by which PC and Physician perform the Services which are the subject of this Agreement. PC shall perform its work and functions in a manner consistent with the standard of care of what a reasonably prudent health care professional in the field of general surgery would do in like or similar circumstances.

6.1.3   PC understands and agrees that (1) no Physician will be treated as an employee of MRG for federal tax purposes; (2) MRG will not withhold on behalf of any Physician any sums for income tax, unemployment insurance, social security, or any other withholding or make available to the Physicians any benefits afforded to MRG employees (including pension, workers' compensation, health insurance or other similar benefits); and (3) all such payment, withholding and benefits are the sole responsibility of PC or Physician.

The label of independent contractor used in the PSA is not dispositive. *Laster*, 316 Mich App at 736. Nonetheless, when the control exercised over Dr. Hawasli is examined, it is apparent that there was no employer-employee relationship. That is, the PSA provided that Dr. Hawasli's corporate entity, Hawasli and Associates Surgical Specialists, P.C., was to provide physicians to staff the Clinic operated by Ascension. This agreement stated that MRG would provide the office space, the staff, and the equipment necessary to run a medical practice. In turn, Dr. Hawasli's corporate entity was to furnish staff physicians. The staff physicians were referred to as independent contractors, federal taxes were not deducted from their compensation, they were not entitled to other employment benefits, and their medical treatment of patients was not subject to MRG's scrutiny.

In *Laster*, the plaintiff was treated at the defendant hospital by Dr. Lim. Dr. Lim was not on the hospital payroll, but worked at a surgical entity that had staff privileges at the defendant hospital. The plaintiff, although acknowledging that Dr. Lim was characterized as an independent contractor, contended that the defendant hospital should be vicariously liable for Dr. Lim's medical malpractice because of the defendant hospital's extensive on-call requirements that allegedly constituted sufficient control to impose liability. The trial court found that there were factual issues regarding vicarious liability because of the degree of control exercised by the defendant hospital. *Laster*, 316 Mich App at 729-733. On appeal, this Court reversed, stating:

Our review of the record suggests that Dr. Lim is clearly an independent contractor because Henry Ford did not control the manner or method used by on-call doctors, like Dr. Lim, to diagnose or treat their patients.

Henry Ford had very little control over Dr. Lim, and no "control over the method of his . . . work." His on-call responsibilities notwithstanding, Dr. Lim was generally free to see as many or as few patients as he desired, he could generally select his own patients, he did not and was not required to use the administrative machinery of the hospital to bill patients, and he was part of an entirely separate practice with its own staff and employees. Also, the hospital never paid Dr. Lim for his services, and he was free to obtain privileges at other hospitals. The mere fact that a physician is required to maintain privileges at a hospital and undertake on-call responsibilities is not sufficient under Michigan law to constitute control over the physician's professional practice of medicine.

The trial court relied on select provisions of the on-call agreement when it found that a question of fact existed regarding whether Dr. Lim was an actual agent of Henry Ford. . . . Notably, none of the [on-call requirements] addresses, much less controls, how Dr. Lim is to diagnose patients or how he is to perform surgery while at Henry Ford. The fact that defendants may have required some logistical and quality-assurance measures does not rise to the level of "control over the method of [Dr. Lim's] work especially when the work that is alleged to have been negligently performed is not addressed by the on-call agreement. [*Id*. at 737-738 (citations omitted).]

In his deposition, Dr. Hawasli testified that he became an *employee* of Ascension in December 2019, long after plaintiff's surgery occurred in January 2019. Before this employment contract, Dr. Hawasli was subject to the PSA between February 2014 and March 2019. In the PSA, Dr. Hawasli's corporate entity, Hawasli and Associates Surgical Specialists, P.C., agreed to provide physicians to Ascension at their clinics and hospitals. Under the PSA, Dr. Hawasli maintained his liability insurance for which he was reimbursed, he was entitled to monthly draws and advances, some operating expenses of his PC were reimbursed, and he received "extras" for exceeding production levels. Dr. Hawasli was subject to a non-compete agreement pertaining to the performance of administrative or director jobs at other local hospitals. Including his residency, Dr. Hawasli was a staff physician with "Ascension St. John" for 40 years.

Dr. Hawasli testified that at the time of plaintiff's surgery, he was employed by his own private practice, Hawasli and Associates Surgical Specialists, P.C., and he was not employed by "Ascension St. John Hospital" or "Ascension Medical Group." Additionally, he claimed to discuss with plaintiff the risks and complications associated with her surgery, but he did not confer with other hospital staff or employees regarding the risks and complications. Rather, Dr. Hawasli exercised his own training, education, and experience in performing plaintiff's surgery; he used his own medical judgment to make decisions about the extent of the procedure. Additionally, Dr. Hawasli had an existing relationship with plaintiff at his private office outside of the hospital. St. John Hospital and Ascension did not exercise any control during plaintiff's surgery. And, when performing a surgery, Dr. Hawasli was not governed by a contract, policy, or procedure, but performed in accordance with his training and experience.

In light of Dr. Hawasli's testimony and the terms of the PSA, there is no indication that an employer-employee relationship existed between St. John Hospital and Dr. Hawasli. Even if it is assumed that St. John Hospital was a party to the contract, the contract provided that Dr. Hawasli

was an independent contractor, and he was paid accordingly without any taxation or deductions. Although the PSA provided that employees, rent, and insurance were supplied by MRG, there was no indication that medical judgment was controlled by the PSA. Dr. Hawasli confirmed in his deposition testimony that his surgeries were not supervised and that he exercised his own judgment, explaining the risks and complications to his patients, not to other hospital staff or employees. Thus, regardless of the parties to the PSA and the characterization of the relationship, the record evidence did not reflect that an employer-employee relationship existed between St. John Hospital and Dr. Hawasli. See *Laster*, 316 Mich App at 736-737. "[N]ot just any type of control will suffice to transform an independent contractor into an employee or agent; rather, the control must relate to the method of the work being done." *Laster*, 316 Mich App at 736. Although the PSA demonstrated that MRG controlled the *administrative* functions of the operation of the clinic by providing employees, rental space, and equipment, no corporate entity, such as Ascension or St. John Hospital controlled the manner of the work performed. Specifically, these entities did not supervise or control the surgeries or treatment between Dr. Hawasli and his patients. Because an employer-employee relationship did not exist between St. John Hospital and Dr. Hawasli, the issue becomes whether liability may attach vicariously through agency in light of the *Grewe* decision.

As previously discussed, our Supreme Court examined vicarious liability and adopted a test for imposing liability:

> An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. In this connection it is urged by appellant that before a recovery can be had against a principal for the alleged acts of an ostensible agent, three things must be proved, to wit . . . *[First, t]he person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence.* [*Grewe*, 404 Mich at 252-253 (citations and quotations omitted, emphasis added).]

Again, the *Grewe* plaintiff went to the hospital to obtain treatment for a separated shoulder, choosing the hospital where he did not have a treating doctor. There was no evidence that the plaintiff was given any information regarding the treating doctor and whether he was an independent contractor or a hospital employee. *Id*. at 253-254. Specifically, the plaintiff testified that when he entered the hospital, it was to obtain treatment from the hospital itself. He had no preexisting patient-physician relationship with any of the medical personnel who treated him at the hospital. Even the doctors that treated the plaintiff at the hospital testified that their treatment arose from the plaintiff's presentation at the hospital. More specifically, the emergency room doctor examined the plaintiff, and then the plaintiff was referred to other doctors at the hospital. Under these circumstances, the *Grewe* Court determined that the jury verdict against the defendant hospital was supported by the evidence because the plaintiff looked to the defendant hospital for treatment and "was treated by medical personnel who were the ostensible agents of [the] defendant hospital." *Id*. at 254-255.

In the present case, however, there is no evidence that plaintiff selected St. John Hospital or that St. John Hospital made any representations to her regarding Dr. Hawasli's employment status. To the contrary, plaintiff testified that she had a longstanding history with Dr. Hawasli. Her first surgery was for "parathyroid," and it occurred "years ago." After this first surgery, Dr. Hawasli performed a second parathyroid surgery, hemorrhoid surgery, a "laparoscopic Nissen fundoplication," and gallbladder removal upon plaintiff. Although plaintiff could not recall when she began her treatment with Dr. Hawasli, he testified that the treatment commenced in 2007.

Thus, plaintiff had a long-term treatment relationship with Dr. Hawasli. She did not testify where the other surgeries occurred or that St. John Hospital made a representation to her or led her to believe that an agency relationship existed between the hospital and Dr. Hawasli. Applying *Grewe*, there is no indication that St. John Hospital, as the principal, intentionally led plaintiff to believe that Dr. Hawasli was its agent. Additionally, plaintiff did not identify any statement by Dr. Hawasli of an agency relationship that was reinforced by St. John Hospital. There is no indication that St. John Hospital served as anything other than the site of plaintiff's surgery. In light of the failure to show a reasonable belief on plaintiff's part, I agree that the trial court erred in denying St. John Hospital's motion for summary disposition.[4]

## V. THE PSA AND ASCENSION

Ascension also contends that the trial court erred in denying its motion for summary disposition and in its conclusion regarding employment status. For the reasons articulated in section IV, I agree.

A defendant is generally liable for his own acts of negligence and not the acts of others. *Laster*, 316 Mich App at 734. Under respondeat superior, an employer may be liable for the negligence of employees acting within the scope of his employment. *Id*. When an employer-employee relationship is lacking, however, vicarious liability may attach through agency. *Id*. at 735.

In the present case, Dr. Hawasli's professional corporation entered into the PSA to provide physicians to staff a clinic and provide surgical services. In the PSA, the corporate entity, MRG, an alleged affiliate of St. John Hospital and Ascension, set forth a multitude of administrative functions that it would perform in the operation of the clinics. The agreement characterized the physicians as independent contractors and paid them accordingly, by failing to withdraw applicable taxes and provide other benefits such as retirement accounts. And, irrespective of the label set forth in the contract, Dr. Hawasli testified that his relationship was that of an independent

---

[4] I note that plaintiff submitted that the question of agency always presented a question of fact, and therefore, the trial court could not grant summary disposition. But, the issue of agency becomes a question of fact when there is a disputed question and direct or inference testimony tends to establish it. *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n*, 458 Mich 540, 556; 581 NW2d 707 (1988). In this case, plaintiff acknowledged that she had a surgical history with Dr. Hawasli and failed to present evidence that St. John Hospital served as anything other than the site of the operation. Therefore, I conclude that there was no genuine issue of material fact, and summary disposition was appropriate.

contractor. That is, his treatment and surgeries of patients were not controlled or supervised by those entities, and instead, he autonomously exercised medical judgment. To transform an independent contractor into an employee, the control must relate to the method of the work being done. *Laster*, 316 Mich App at 736. Dr. Hawasli was contracted to treat patients as a surgeon. Although his staffing, office space, and billing may have been managed by MRG, the method of the work to be done, Dr. Hawasli's surgical treatment of patients, was not controlled by MRG. Accordingly, in my view, the trial court erred in concluding that the PSA gave rise to an employment arrangement that precluded summary disposition. In fact, plaintiff had a relationship with Dr. Hawasli dating back to 2007, before the execution of the PSA, and she failed to present evidence that any representations by Ascension caused it to be vicariously liable for Dr. Hawasli's alleged medical malpractice. Therefore, I would conclude that summary disposition was also appropriate in favor of Ascension.

## VI. NEGLIGENCE

Finally, Ascension and St. John Hospital submit that the trial court erred in denying partial summary disposition of the claims of negligence and gross negligence. I again agree.

"Whether a claim sounds in ordinary negligence or medical malpractice is a question of law that is reviewed de novo." *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018). The court disregards the labels given to the claims but reads the complaint as a whole and seeks the gravamen of the claims. *Id*. at 519. An examination of the claim must occur to determine whether it raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience. *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 423; 684 NW2d 864 (2004). When the reasonableness of a healthcare professional's action may be analyzed by lay jurors in light of their common knowledge and experience, the claim is for ordinary negligence. *Id*. But, if the reasonableness of the healthcare professional's action can be determined by a jury only after having been presented with the standards of care as explained by experts, a medical malpractice claim is involved. *Id*.

Plaintiff claimed that Dr. Hawasli exceeded her consent to parathyroid surgery and committed an assault and battery upon her by removing her thyroid, an issue for analysis by lay jurors. In doing so, plaintiff abandoned any claim pertaining to other failures such as to train or supervise and did not mention any acts or omissions by Ascension and St. John Hospital with regard to Dr. Hawasli. However, Dr. Hawasli testified that plaintiff's symptoms were consistent with thyroid, not parathyroid, issues, that he apprised her of the risks and complications, that the consent form signed by plaintiff explicitly authorized additional surgery as necessary in the exercise of medical judgment, and that he would not have performed the surgery if plaintiff refused to permit the removal of the thyroid. A mere disagreement regarding consent was not at issue, and expert testimony was necessary for the jury to address the issue.[5] Because the claim sounded in

---

[5] Plaintiff signed a consent form, authorizing Dr. Hawasli to perform the operation listed as "minimally invasive right inferior parathyroidectomy rapid pth nuclear probe." However, the consent also contained a paragraph authorization additional procedures if found to be necessary:

medical malpractice, the trial court erred in failing to dismiss the claim of ordinary negligence. And, to the extent it was claimed that the removal of the thyroid was medically necessary, plaintiff did not identify conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. See *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 382; 838 NW2d 720 (2013). Thus, I would agree that the trial court also erred in failing to dismiss the claim of gross negligence.

I would reverse and remand for entry of an order granting summary disposition in favor of Ascension and St. John Hospital.


/s/ Anica Letica

---

I fully understand that in preparation for, during and following the contemplated operation(s), conditions may be revealed or discovered that *in the judgment of the physician* and others referred to above, make necessary or advisable a different operation or extension of the original contemplated operation. I, therefore, request and authorize the physician and others referred to above to perform these additional operations. [Emphasis added.]

Plaintiff contends that she merely consented to a parathyroid procedure, that Dr. Hawasli exceeded the scope of consent she granted, that Dr. Hawasli's action constituted ordinary negligence, and that the jury could analyze this issue without the benefit of expert testimony. On the contrary, Dr. Hawasli testified that plaintiff's symptoms were not consistent with parathyroid issues and that he suspected and warned plaintiff of thyroid issues. Dr. Hawasli denied that plaintiff ever apprised him that he should not remove her thyroid. And he testified that he would have advised plaintiff to find another surgeon if he could not address or remove her thyroid. Dr. Hawasli acknowledged that the consent form identified a particular procedure, but noted the form also addressed that physician judgment may make necessary a different operation or an extension of the original procedure. He testified that additional issues were addressed during a surgery to prevent a patient from enduring further surgeries and that occurred in this case. Whether Dr. Hawasli was warranted in removing plaintiff's thyroid during the procedure in accordance with the signed consent form and premised on medical necessity requires expert testimony. Thus, this did not present an issue of ordinary negligence that the jury could assess.