*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNIVERSITY NEUROSURGICAL ASSOCIATES
PC, doing business as MICHIGAN HEAD AND
SPINE INSTITUTE, and VHS OF MICHIGAN
INC., doing business as DETROIT MEDICAL
CENTER,

      Plaintiffs-Appellees,

v

USA UNDERWRITERS,

      Defendant-Appellee,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

      Defendant-Appellant,

and

UNNAMED ASSIGNEE OF MAIPF,

      Defendant.

UNPUBLISHED
December 19, 2024
9:09 AM

No. 364945
Wayne Circuit Court
LC No. 21-015441-NF

DMA, a protected person, by Conservator ZETRICK
HILL,

      Plaintiff,

v

No. 364946
Wayne Circuit Court

-1-

CAROLYN DENISE AUSTIN and PERCY CRUTCH,

       Defendants,

and

USA UNDERWRITERS,

       Defendant-Appellee,

and

MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY,

       Defendant-Appellant.

LC No.   21-008797-NI

---

USA UNDERWRITERS,

       Plaintiff-Appellee,

v

DMA, a protected person, by Conservator, ZETRICK HILL,

       Defendant-Appellee,

and

CAROLYN DENISE AUSTIN and PERCY ONEAL CRUTCH,

       Defendants,

and

MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY,

       Defendant-Appellant.

No.   364947
Wayne Circuit Court
LC No.   21-011607-CK

---

Before:  N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In these consolidated appeals, defendant Michigan Automobile Insurance Placement Facility (MAIPF), appeals three October 5, 2022 orders of the trial court granting the motions for summary disposition of defendant, USA Underwriters (USAU), brought under MCR 2.116(C)(7) (action barred by doctrine of collateral estoppel), (C)(8) (failure to state a claim on which relief can be granted), and (C)(10) (no genuine issue of material fact). In Docket No. 364945, MAIPF appeals by leave granted[1] in this action in which plaintiffs, University Neurosurgical Associates, doing business as Michigan Head and Spine Institute (MHSI), and VHS of Michigan, Inc., doing business as Detroit Medical Center (the DMC), sought recovery of disputed medical payments. In Docket No. 364946, MAIPF, appeals by leave granted[2] in this action in which plaintiff, Zetrick Hill, as conservator for DMA, a protected person, alleged negligence against defendants Carolyn Denise Austin and Percy Crutch, and sought first-party no-fault benefits under the no-fault act, MCL 500.3101 *et seq.*, against USAU. In Docket No. 364947, MAIPF appeals by leave granted[3] in this action in which USAU sought declaratory judgment against defendant, Hill, as conservator for DMA, a protected person, and defendants Austin, Percy Oneal Crutch, and MAIPF. For the reasons set forth in this opinion, we reverse in part, vacate in part, and remand to the trial court for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

These appeals arise from catastrophic injuries that DMA suffered when he fell out of a moving vehicle driven by his mother, Austin, in the city of Detroit. On November 6, 2020, Austin, accompanied by one of her daughters, went to pick up DMA from a party where everyone was intoxicated. DMA's girlfriend and her mother attacked Austin and knocked her down. DMA's girlfriend and her mother then placed DMA in the vehicle, and Austin drove away as DMA's girlfriend and mother chased the vehicle with sticks. As Austin continued to drive, her daughter informed Austin that DMA was not in the vehicle, and Austin then noticed that he had fallen out. Austin believed that the door of the vehicle was not closed properly when DMA was placed inside. DMA suffered a severe and traumatic brain injury and other incapacitating blunt force injuries to his head.

Hill, as DMA's conservator, filed a cause of action against Austin, Crutch, USAU, and MAIPF in Wayne Circuit Court Case No. 21-008797-NI. The complaint alleged negligence against both Austin and Crutch, sought first-party benefits against USAU, and alternatively, personal protection insurance (PIP) coverage from MAIPF.

---

[1] *Univ Neurosurgical Assoc, PC v USA Underwriters*, unpublished order of the Court of Appeals, entered July 3, 2023 (Docket No. 364945).

[2] *DMA v Carolyn Denise Austin*, unpublished order of the Court of Appeals, entered July 3, 2023 (Docket No. 364946).

[3] *USA Underwriters v DMA*, unpublished order of the Court of Appeals, entered July 3, 2023 (Docket No. 364947).

In Wayne Circuit Court Case No. 21-011607-CK, USAU filed a complaint against Hill, Austin, and Crutch seeking declaratory relief. USAU alleged that both Austin and Crutch had made material misrepresentations when procuring their respective policies because they did not disclose to USAU that Austin's driver's license had been suspended within the prior three years, and Crutch also did not disclose the names of all the residents in the household who might drive his insured vehicle. With respect to Austin's no-fault policy, USAU also asserted that the policy had been cancelled on October 23, 2020, on the basis of nonpayment of premiums. USAU refunded the policy premiums for both policies and rescinded both policies on the basis of the material misrepresentations made in procuring the policies.

MHSI and the DMC filed a cause of action in Wayne Circuit Court Case No. 21-015441-NF, against USAU, MAIPF, and an unnamed assignee of MAIPF. MHSI and the DMC alleged that they had provided necessary products, services, and accommodations to DMA for injuries he sustained in the November 6, 2020 accident, but that USAU and MAIPF had not yet reimbursed MHSI and the DMC. MHSI and the DMC alleged that the total cost of their services to DMA from November 7, 2020 through December 15, 2020 was $1,408,391.89. MHSI and the DMC also alleged that either USAU or MAIPF was the highest priority no-fault insurer responsible for the payment of no-fault benefits arising from the November 6, 2020 motor vehicle accident. The trial court ultimately consolidated all three cases under Case No. 21-015441-NF.

In February 2022, Austin and Crutch had been defaulted in Wayne Circuit Court Case No. 21-011607-CK, and on the motion of USAU, a default judgment was entered against both Austin and Crutch. The default judgment provided that both no-fault policies were rescinded on the basis of material misrepresentations in the procurement and that the Austin policy had been cancelled because of premium nonpayment. The default judgment further stated that DMA did not have coverage under either the Austin or Crutch no-fault policies. Notably, before entering the default judgment, the trial court did not conduct a balancing of the equities before rescinding the no-fault policy as to DMA. MAIPF unsuccessfully moved to set aside the default judgment, and the trial court denied the motion, concluding that the no-fault policies were rescinded as to both Crutch and Austin, and to DMA as well.

USAU subsequently filed three motions for summary disposition in Wayne Circuit Court Case No. 21-015441-NF, and MAIPF, MHSI and the DMC filed responses. In its motion for summary disposition with respect to the Austin policy, USAU claimed that judgment should be granted in its favor as a matter of law because the Austin policy had been cancelled before the accident because of nonpayment of premiums, and it was also voidable when USAU discovered Austin's material misrepresentations in procuring the policy. USAU made a similar argument with respect to the Crutch policy as it pertained to Crutch's material misrepresentations. MAIPF responded, claiming that genuine issues of material fact existed regarding whether Austin and Crutch made fraudulent misrepresentations in the procurement of their respective policies. MAIPF also argued that the trial court made a significant legal error in not balancing the equities as to DMA before extending the rescission of the no-fault policies to him.

USAU also argued in a third motion addressing both no-fault policies that summary disposition should be granted on the basis of collateral estoppel, and MAIPF could not litigate the issue of DMA's entitlements to benefits because the issue had been earlier determined in the February 11, 2022 default judgment. MAIPF responded, asserting, among other things, that the

default judgment was not a valid and final judgment and MAIPF had not been able to fully and fairly litigate the issue of whether the rescissions of the no-fault policies should have been extended to DMA, an innocent third party. MHSI and the DMC also filed responses to all three motions asserting legal arguments similar to those of MAIPF.

Without holding a hearing, the trial court granted all three motions, concluding that because of the default judgment entered against Austin and Crutch, the no-fault policies were void and cancelled, and MAIPF was the first in priority for PIP coverage for DMA because the Austin and Crutch no-fault policies were not in effect at the time of the accident. MAIPF now appeals by leave granted in Docket Nos. 364945, 364946, and 364947.

## II. COLLATERAL ESTOPPEL

MAIPF first argues that the trial court erred in granting summary disposition in favor of USAU on the basis of collateral estoppel. We agree.

## A. STANDARD OF REVIEW

USAU moved for summary disposition on the basis of collateral estoppel as to both the Crutch and Austin policies under MCR 2.116(C)(7). This Court reviews the trial court's decision on a motion for summary disposition de novo to determine whether the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In *Soave v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 364415); slip op at 3, this Court explained the standard of review for a motion brought under MCR 2.116(C)(7):

> When addressing such a motion, a trial court must accept as true the allegations of the complaint unless contradicted by the parties' documentary submissions. *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). Although not required to do so, a party moving for summary disposition under Subrule (C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. *Maiden*[, 461 Mich at 119]. If no material facts are disputed, whether a plaintiff's claim is barred by the pertinent statute of limitations is a question of law for the court to determine. *Dextrom* [*v Wexford County*, 287 Mich App 406, 429; 789 NW2d 211 (2010).]

## B. ANALYSIS

As this Court recently recognized in *Macomb Co Prosecutor v Macomb Co Executive*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 370065); slip op at 8, for the doctrine of collateral estoppel to apply, three elements must be satisfied:

> "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of

estoppel." *2 Crooked Creek LLC v Cass Co Treasurer*, 507 Mich 1, 22 n 47; 967 NW2d 577 (2021) (citation, quotation marks, and brackets omitted in original).

USAU cannot satisfy the initial requirement for the doctrine to apply because the default judgment is not a valid and final judgment. *Macomb Co Prosecutor*, ___ Mich App at ___; slip op at 8. Michigan courts prefer decisions on the merits, and therefore, defaults and default judgments are not favored. *Rogers v JB Hunt Transport, Inc*, 466 Mich 645, 654; 649 NW2d 23 (2002). "A default is a punitive measure used to encourage participation and cooperation in litigation." *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 554; 872 NW2d 412 (2015) (citation omitted). When a default judgment is entered, it is considered equivalent "to an admission of every well-pleaded matter in the complaint." *Id*.

A default entered against one party will not establish liability against another. For example, in *Rogers*, 466 Mich at 648-649, which involved a negligence action, the defendant driver of a tractor trailer owned by the defendant trucking company did not participate in discovery and was defaulted. The plaintiff moved for summary disposition, asserting that the default settled the issue of the defendant driver's negligence, and, therefore, it also settled the liability of the defendant trucking company. The trial court agreed, granting the motion in part, determining that the trucking company was vicariously liable for the driver's negligence and could not contest issues of negligence at trial. *Id*. at 649. This Court affirmed the trial court's ruling, but our Supreme Court disagreed, and held that such a result was "contrary to longstanding legal principles related to the effect of a default." *Id*. at 652. Our Supreme Court, *id*. at 652-653, then explained the impact of the default entered on the defendant driver's liability in the case:

> As a sanction for [the defendant driver's] failure to cooperate with the discovery process, the trial court entered an order of default against him. It is well settled under the law that this default operates as an admission of [the defendant driver's] negligence. However, a traditional rule of default provides that the default of one party is not an admission of liability on the part of a nondefaulting coparty. *Allstate Ins Co v Hayes*, 442 Mich 56, 73; 499 NW2d 743 (1993). Thus, the default entered against Crenshaw does not establish any liability on the part of J.B. Hunt.

Here, the defaults were entered against Austin and Crutch as a consequence of their failure to appear and defend their interests in Wayne Circuit Court Case No. 21-008797-NI. Accordingly, the defaults entered against Austin and Crutch did not establish any liability on the part of DMA. *Rogers*, 466 Mich at 652-653. Yet the default judgment adjudicated the interests of DMA, holding that he was denied coverage under both the Austin and Crutch policies. Accordingly, the default judgment was invalid because it resulted from the trial court's failure to balance the equities of the case as to DMA, an innocent third party. Under *Bazzi v Sentinel Ins Co*, 502 Mich 390, 410-411; 919 NW2d 20 (2018), the trial court was required to conduct a balancing of the equities with respect to DMA before rescinding the no-fault policy as to him. And, in *Univ of Mich Regents v Mich Auto Ins Placement Facility*, 340 Mich 196, 204; 986 NW2d 152 (2022), this Court similarly held that, before extending the mutual rescission of a no-fault policy to an innocent third party, the trial court must first balance the equities between the defrauded insurer and the innocent third party.

-6-

In our view, the February 11, 2022 default judgment is invalid on two separate grounds. First, the default judgment determined DMA's entitlement to benefits, even though Hill had participated in the litigation and was not a defaulted party. *Rogers*, 466 Mich at 652-653. Second, the default judgment determined that DMA did not have PIP coverage under either the Crutch or Austin policies, without the trial court balancing the equities first as required by Michigan law. *Univ of Mich Regents*, 340 Mich at 204. Moreover, as a consequence of the trial court's decision, the parties, including Hill and MAIPF, were deprived of a full and fair opportunity to litigate how the equities should be weighed, in contravention of the second requirement of collateral estoppel. *Estes v Titus*, 481 Mich 573, 585; 751 NW2d 493 (2008); *Macomb Co Prosecutor*, ___ Mich App at ___; slip op at 8. Because the trial court entered the default judgment against DMA, the trial court did not reach the substantive merits of whether the rescission of the policies on the basis of the insured's fraud in the procurement should extend to an innocent third party. Therefore, the second requirement of collateral estoppel was not met.

Regarding the third requirement, our Supreme Court has explained mutuality of estoppel as "requir[ing] that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat v State Farm Ins Co*, 469 Mich 679, 684; 677 NW2d 843 (2004) (quotation marks and citation omitted.) As the Court in *Monat*, *id*. at 685, explained, relitigation is generally not precluded if the party against whom issue preclusion is sought could not, as a matter of law, have obtained review of the judgment in the first action. In the present case, MAIPF was not a party to Wayne Circuit Court Case No. 21-011607-CK, the case that USAU filed against Hill, Austin, and Crutch, seeking an order of declaratory judgment with respect to the Crutch and Austin no-fault policies. Therefore, MAIPF was not in a position to obtain review of the default judgment. MAIPF also cannot be determined to be in privity with any of the defendants to Wayne Circuit Court Case No. 21-011607-CK, because Hill, Austin, and Crutch were not so closely identified in interests as MAIPF that they would represent the same legal rights that MAIPF was attempting to assert in Wayne Circuit Court Case No. 21-015441-NF. See *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013) (discussing parties in privity). In fact, MAIPF's interests arguably conflicted with those of Hill, Austin, and Crutch. That is, while all of the parties may have initially sought to have DMA recover his PIP benefits under the Crutch and Austin policies, MAIPF's interests diverged from those of the insureds and Hill because if the no-fault policies were rescinded, MAIPF may have sought to preclude DMA from recovering PIP benefits from MAIPF. Accordingly, the parties were not so closely aligned in their interests that they could be said to be in privity with each other in Wayne Circuit Court Case No. No. 21-011607-CK. Therefore, USAU was not successful in raising the doctrine of collateral estoppel and the trial court's order granting USAU summary disposition on this basis is reversed.

### III. FRAUD IN THE PROCUREMENT, CANCELLATION FOR NONPAYMENT OF PREMIUM, AND RESCISSION

MAIPF next argues that the trial court erred in granting summary disposition under MCR 2.116(C)(10) as to the Austin and Crutch policies because genuine issues of material fact existed with regard to whether (1) Austin and Crutch engaged in fraud in the procurement of the policies, (2) USAU complied with applicable law in cancelling Austin's policy on the basis of nonpayment of premiums, and (3) the trial court erred in rescinding the no-fault policies as to

-7-

DMA without first conducting a balancing of the equities. We address each of these issues separately.

## A. STANDARD OF REVIEW

USAU moved for summary disposition as to the Crutch policy under MCR 2.116(C)(10) and as to the Austin policy under MCR 2.116(C)(8) and (C)(10). Because the parties included materials outside of the pleadings in support of their motions and responses, and the trial court considered these materials in rendering its decision on both motions, we conclude that summary disposition with respect to both motions was granted under MCR 2.116(C)(10) (no genuine issue of material fact). *Eversole v Nash*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366556); slip op at 3. In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), our Supreme Court explained the standard of review for a motion brought under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

## B. MATERIAL MISREPRESENTATIONS IN THE PROCUREMENT

A review of USAU's motions for summary disposition with respect to the Crutch and Austin policies reflects that USAU sought rescission on the basis of a contractual antifraud provision as well as the common-law defense of fraud. In *Meemic Ins Co v Fortson*, 506 Mich 287, 293; 954 NW2d 115 (2020) ("*Fortson*"), our Supreme Court held that "such contractual provisions are valid when based on a defense to mandatory coverage provided in the no-fault act itself or on a common-law defense that has not been abrogated by the act." In other words, a contractual antifraud provision is valid only when based on a defense to mandatory no-fault coverage set forth in the no-fault act itself or a common-law defense that has not been abrogated by the act. The *Fortson* Court, citing its earlier decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), recognized that an insurer may avail itself of several common-law doctrines of fraud in an effort to seek rescission of a contract, but to do so the contract must have been obtained as a result of the fraud or misrepresentation. *Fortson*, 506 Mich at 299-300. "At common law, the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." *Id*. at 305 (citing Dobbs, Remedies (2d ed., abrg.), § 9.5, p. 716). Accordingly, under the facts of this case, because the alleged fraud of Austin and Crutch related to the procurement of their respective no-fault policies with USAU, it was appropriate for USAU to seek rescission of its no-fault policies both on the basis of the contractual provision in its policies as well as under the common law.

MAIPF also asserts that factual disputes existed regarding whether Austin and Crutch made material misrepresentations in the procurement of their respective no-fault policies to the extent that USAU could seek rescission of the policies. We disagree.

In *Titan*, 491 Mich at 555, our Supreme Court explained the elements of actionable fraud, one of the common-law doctrines that falls under the ambit of fraud, that may allow an insurer to pursue a legal or equitable remedy with respect to a contract. Specifically, in *Titan*, our Supreme Court said:

> [t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [Citation omitted.]

When completing the policy application, Austin answered "no," when asked if her driver's license had been suspended in the past three years, and "yes," with respect to whether she had listed any drivers who may operate the insured vehicle. Crutch responded "no," when asked if any other member of his household had had their driver's license suspended, and "yes," when asked if he had included in his application the names of all drivers who may drive the insured vehicle. The motor vehicle report (MVR) dated December 15, 2020 indicates that Austin's license was most recently suspended effective February 28, 2013, but that her driving privileges were reinstated on May 23, 2019. In claim notes written on December 24, 2020, USAU indicated that the MVR completed on Austin revealed that her driver's license had been suspended in February 2013, and was reinstated on May 23, 2019.

In its brief on appeal, MAIPF questions the admissibility of the MVR, claiming it was not a reliable source of information because of a disclaimer in the report stating that the public record search from which it was taken could include errors, and the system should not be relied on as accurate. While MAIPF correctly states that evidence presented in support of a motion for summary disposition under MCR 2.116(C)(10) must be substantively admissible,[4] any potential deficiencies in the MVR would go to its weight, rather than its admissibility. See, e.g., *Wischmeyer v Schanz*, 449 Mich 469, 480; 536 NW2d 760 (1995) (recognizing that gaps or weaknesses in the testimony of an expert witness go to its weight, rather than its admissibility).

---

[4] MCR 2.116(G)(6) provides:

> Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion.

Therefore, to the extent that both Austin and Crutch answered "no," when asked if they or a member of their household had had their license suspended within the three years prior to the policy applications, or when they indicated that they had listed all drivers that may operate the insured motor vehicles but did not include DMA, these representations were patently false. *Titan*, 491 Mich at 555.[5] USAU also presented the affidavit of Takara Thompkins, an employee of USAU, who averred that both Crutch and Austin, in their respective applications for insurance, had stated that they and no one in their household had their license suspended within the last three years, and "USA Underwriters would not have issued an insurance policy to either Austin or Crutch" based on the failure of Austin and Crutch to disclose the suspension of Austin's license. Therefore, on the basis of this evidence, factual disputes did not exist regarding whether Crutch and Austin knowingly made false misrepresentations on their policy applications, and that these misrepresentations were made with the intention that USAU would issue no-fault policies. *Id*.

With respect to the element of reliance, MAIPF suggests that USAU knew, or could have known, about the misrepresentations when issuing the two policies. Our Supreme Court has acknowledged that a fraud cannot be committed on one who has full knowledge to the contrary regarding the substance of the representation. *Id*. at 555 n 4. Our Supreme Court has likewise emphasized that the common law did not impose a duty on an insurer to investigate misrepresentations made by its insured in the procurement of a no-fault policy. *Id*. However, under circumstances in which an insurer is given information that undermines and refutes a representation, ignoring such information is very different than failing to engage in an investigation of a potential misrepresentation. *Id*. The MVR included in the lower court file is dated December 15, 2020, which was over two months after Austin applied for her no-fault policy, and one month after Crutch applied for his no-fault policy. Accordingly, the evidence does not indicate that when Austin and Crutch procured their policies, USAU was aware of the fraudulent misrepresentations, and Thompkins, who reviewed the applications, stated that the policies would not have issued had USAU been aware of Austin and Crutch's fraud. Notably, MAIPF did not present evidence in support of its responses to the motions for summary disposition that contradicted Thompkins's statements in her affidavit. In light of these circumstances, the trial court did not err in concluding that genuine issues of material fact did not remain for trial concerning whether Austin and Crutch engaged in fraud in the procurement of their no-fault policies.

## C. DID USAU COMPLY WITH MCL 500.3020 IN CANCELLING AUSTIN'S POLICY ON THE BASIS OF NONPAYMENT OF INSURANCE PREMIUMS?

MAIPF also asserts on appeal that questions of fact remained with respect to whether USAU cancelled Austin's policy in compliance with Michigan law before the November 6, 2020 accident. Specifically, MAIPF claims that the notice of cancellation that USAU sent to Austin

---

[5] The parties do not dispute that DMA lived with both Austin and Crutch and the claim notes from USAU's investigation state that Austin disclosed that DMA was a member of her household, along with Crutch and two other stepchildren.

-10-

was ineffective because of its conditional language, and it was not sent in time for it to be received within 10 days of the policy's cancellation date.

MCL 500.3020, a provision of the Insurance Code, MCL 500.100 *et seq*., addresses how an insurer may cancel a no-fault policy and provides, in pertinent part:

> (1) A policy of casualty insurance, except worker's compensation and mortgage guaranty insurance, including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:
>
> * * *
>
> (b) Except as otherwise provided in subdivision (d), that the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

The record reflects that Austin made an installment payment of $157.08 on October 7, 2020, when she applied for the no-fault policy, and a payment receipt was made out to her at her address on Normandy Street in Detroit. In her policy application completed on October 7, 2020, Austin's address for the insured vehicle was the Normandy address. The policy's effective date was October 7, 2020, and Austin was provided with a courtesy notice, also addressed to her at the Normandy address, setting forth the installment payment schedule for the premium payments. Included in support of its motion for summary disposition as to the Austin policy, USAU attached a notice of cancellation addressed to Austin at the Normandy Street address, and the notice specified that Austin owed a minimum premium payment of $350.98, and the cancellation date was listed as October 23, 2020. The agent who procured the Austin and Crutch policies is also listed on the notice of cancellation. The notice of cancellation is dated October 13, 2020, and provides, in pertinent part:

> You are hereby notified in accordance with terms and conditions of the above mentioned policy, and in accordance with the law, the coverage outlined in your insurance policy will cease and terminate as indicated above unless we receive your Minimum Amount Due before the Cancellation Date. *The failure to pay before the cancellation date will subject your policy to cancellation.* Payments received on or after the cancellation date will be subject to a vehicle inspection (when policy has collision and other than collision coverages) and reinstatement fee, if the policy is eligible for reinstatement. If reinstatement payment is received prior to completion of vehicle inspection it will be returned to sender unpaid. Reinstatement payments made by check, draft, or other method of payment and that method of payment is returned for any reason [sic], your coverage will be null and void and your insurance coverage will cease as of the cancellation date shown above.

In *Yang v Everest Nat'l Ins Co*, 507 Mich 314, 325-326; 968 NW2d 390 (2021), our Supreme Court, after reviewing earlier precedent from that Court, construed MCL 500.3020(1)(b) and concluded that the phrase "notice of cancellation," which was not defined in the statute, required a notice of cancellation to be "peremptory, explicit, and unconditional."[6] In *Yang*, 507 Mich at 326, the defendant insurer had sent a notice of cancellation to the insured in which it informed the insurer that if he did not pay his insurance premiums on time, the policy would be cancelled. The *Yang* Court, *id*. at 326-327, explained:

> Given that a cancellation notice must be unconditional to be effective, the letter that Everest sent Yang did not constitute a valid cancellation notice under MCL 500.3020(1)(b).

> \* \* \*

> In this case, because Everest's letter provided that cancellation was conditioned on Yang's failure to pay his insurance premiums, the letter was ineffective as a notice of cancellation.

In contrast, in the present case, the record reflects that Austin's second installment payment was due on October 9, 2020, in the amount of $350.98. The notice of cancellation then informed Austin that her insurance coverage "will cease and terminate" as of October 23, 2020, "unless we received your Minimum Amount Due before the Cancellation Date." The notice of cancellation also clearly provided that the reason for cancellation was "nonpayment of premium." Unlike the facts of *Yang*, in which the insured had not yet failed to make the premium payment when the insurer sent him the notice of cancellation, here Austin had already missed an insurance premium payment, and she was informed that if she did not make the missed payment of $350.98 before October 23, 2020, her coverage under the no-fault policy will "cease and terminate." And, contrary to the notice of cancellation in *Yang*, 507 Mich at 316-317, the notice of cancellation addressed to Austin was unconditional, clear, and peremptory, informing her of the consequence of a cancellation of her policy if she did not remit her overdue premium payment. Under these circumstances, the trial court did not err in granting USAU's motion for summary disposition, on the basis of its reasoning that the Austin policy was cancelled as set forth in the February 11, 2022 order of default judgment, which provided that Austin's policy was cancelled for premium nonpayment before the November 6, 2020 accident.

MAIPF also challenges USAU's notice of cancellation on the basis that USAU did not provide evidence demonstrating that it complied with the 10-day-written-notice requirement of MCL 500.3020(1)(b). In *Nowell v Titan Ins Co*, 466 Mich 478, 483-484; 648 NW2d 157 (2002), our Supreme Court explained that MCL 500.3020, read as a whole, requires that

> the first-class mailing must be done early enough to, with reasonable certainty, provide delivery to the insured at least ten days before the cancellation date. In

---

[6] In *Yang*, 507 Mich at 316-317, the cancellation notice of nonpayment was sent to the insured after he had tendered his first installment payment, and several weeks before his next installment payment of the insurance premium was due.

-12-

other words, an insurer has the duty to mail far enough in advance of the beginning of the ten day period so as to reasonably ensure that the notice will arrive and provide an insured with the potential to have the full ten days' notice that the statute provides.

The Court in *Nowell*, 466 Mich at 483, also observed that the "plain import" of the statutory language was that a mailing in compliance with the statute "does not require proof of service or even a delivery receipt."

In *Nowell*, 466 Mich at 484, the Court further explained that the statute should be construed to mean that a mailing is "reasonably calculated to be delivered so as to arrive at the insured's address at least ten days before the date specified for cancellation for the notice to be effective." The notice of cancellation in the present case stated that it was prepared on October 13, 2020, and that Austin's coverage under the policy would be terminated on October 23, 2020. The question then becomes whether the notice was mailed "so as to be reasonably calculated to arrive at the appropriate address at least ten days before the cancellation date." *Nowell*, 466 Mich at 488. Given that the notice was mailed on October 13, 2020, and the cancellation date was October 23, 2020, we are of the view that the mailing to Austin did not comply with the statutory standard. *Id*. Accordingly, in the present case, to the extent that the trial court erred in holding that genuine issues of material fact did not exist regarding whether USAU complied with MCL 500.3020(1)(b), its decision was erroneous.

## D. RESCISSION OF THE AUSTIN AND CRUTCH POLICIES AS TO DMA

MAIPF next argues that the trial court erred in granting summary disposition of USAU's motions for summary disposition regarding both the Austin and Crutch policies on the basis that both no-fault policies had been properly rescinded because of Austin and Crutch's material misrepresentations made in the procurement of the policies. We agree.

As noted previously in this opinion, since *Bazzi*, this Court, in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 410-411; 952 NW2d 586 (2020) (citation omitted), adopted a nonexclusive list of factors that the trial courts may consider in balancing the equities between two innocent parties. These five factors include:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id*.]

This Court in *Pioneer State Mut Ins Co*, 331 Mich App at 411, described these factors as presenting necessary guidance to both the parties and the lower court in the balancing of the equities. While the trial court in the present case did not conduct a balancing of the equities with

-13-

respect to DMA before extending the rescission of the no-fault policies to him as well, as we have previously concluded in this opinion, the trial court was *required* to engage in this analysis. *Univ of Mich Regents*, 340 Mich App at 206. Therefore, given that the trial court erred on this significant legal issue, we vacate the trial court's orders granting summary disposition as to the Crutch and the Austin policies respectively, and remand to the trial court. The trial court must engage in a balancing of the equities in order to determine whether extension of the rescission of the no-fault policies to DMA is appropriate. While the parties have extensively briefed the issue of the balancing of the equities, it is not appropriate for us to engage in a balancing of the equities in the first instance, as this Court is an error-correcting Court. *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW2d ____ (2024) (Docket No. 363459); slip op at 9. Additionally, in *Bazzi*, 502 Mich at 409, our Supreme Court made clear that when a party seeks rescission of a no-fault policy, which is an equitable remedy, the decision whether to rescind the contract, and the concomitant analysis of balancing the equities, are matters reserved to the trial court's discretion.

In Docket Nos. 364945, 364946, and 364947, the trial court's order granting summary disposition in favor of USAU under MCR 2.116(C)(7) on the basis of the collateral estoppel is reversed. The trial court's orders granting summary disposition under MCR 2.116(C)(10) as to the Austin and Crutch policies are vacated, and the cases are remanded to the trial court for a balancing of the equities. We do not retain jurisdiction.


/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica

-14-